Roy STALLMAN, et al., Appellant.

v.

Katherine T. NEWMAN, Appellee.

No. 14–98–00464–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 28, 1999.

Rehearing Overruled Jan. 20, 2000.

Randy M. Clapp, El Campo, for appellants.

Sidney Levin, Sealy, for appellees.

Panel consists of Chief Justice MURPHY and Justices YATES and HUDSON.

## OPINION

HUDSON, Justice.

Roy and Ann Stallman, appellants, seek review of a declaratory judgment recognizing the existence of a prescriptive easement, as well as an easement by estoppel, across their property. The Stallmans contend in two points of error that the evidence is legally and factually insufficient to sustain the judgment. We reverse and render.

In 1959, Katherine T. Newman purchased 666.3 acres of unimproved land (the "B.S. & F. Survey"). The B.S. & F. Survey is not accessible from any public road, and the record does not disclose what manner of ingress and egress, if any, was available to Newman at the time she purchased the property. The following year, Newman purchased an adjacent tract consisting of an additional 224 acres of unimproved land (the "Miller Survey"). To gain access to the Miller Survey and hence to the B.S. & F. Survey, Newman used a narrow dirt road which crosses a 640 acre adjoining tract known as the "Longley Survey."

The road at issue runs northeast from approximately the center of the Miller Survey to the northern border of the Longley Survey where it connects to County Road 109. The age and origin of the road are not known, but L.D. Schilling testified that in 1933, at the age of

6, he traveled with his uncle, F.M. Schilling, across the road to feed his uncle's livestock on the Miller Survey. From time to time, F.M. Schilling cut away the encroaching brush and used mule teams to fill in low spots with gravel. The road is visible on an aerial photograph taken on September 21, 1938, and there is evidence in the record that the road has been used continuously by the owners or tenants of the Miller and B.S. & F. Surveys since at least the early 1930's.

Whether the construction and use of the road was with the landowner's permission is not known. During the 1930's and 1940's, the Longley Survey was owned by Mrs. Ione Line who lived in Illinois. She leased the property to Dr. Dufner who ran cattle on the land until the mid–1940's. From approximately 1946 to 1959, the Longley Survey was leased to Oscar Wegenhoft who also ran cattle on the land initially, but later began farming the property with the help of sharecroppers. F.M. Schilling, and later L.D. Schilling, used the road to access the Miller Survey during this period, but nothing in the record reflects whether this use was permissive or

hostile. When Newman purchased the Miller Survey, no representations were made to her regarding what right, if any, she had to use the road. Newman subsequently improved her property by adding a cabin, outbuilding, barn and water well.

In 1979, the Stallmans purchased the Longley Survey from the heirs of Thomas and Ione Line. The property was fenced around both the outside perimeter and along the sides of County Road 109. A gate marked the entrance to the "Newman" road. The Stallmans observed approximately a dozen linked locks on the gate. The Stallmans were unable to identify all of the lock owners, and in 1980, those that were unidentified were removed. The Stallmans gave specific permission to the San Bernard Electric Company, Colorado County Precinct One, Houston Pipeline Company, a hunting club, and the Newmans to both use the road and to put their locks on the gate. When the Stallmans gave express permission to the Newmans to continue using the road, neither Newman nor her son claimed they had any vested right or entitlement to

use the road. There was testimony from Newman's son that Mrs. Newman made some repairs to the road both before and after the Stallmans purchased the Longley Survey.[1]

In 1997, the Stallmans perceived that Newman's use of the road interfered with their cattle and hunting operations, and they withdrew their consent for Newman to use the road. Mrs. Newman filed suit, and after a bench trial, the court found an easement by estoppel and prescription in favor of Newman.

### Easement by Estoppel

■ In their first point of error number, the Stallmans contend the evidence is legally and factually insufficient to support an easement by estoppel.

■ The doctrine of easement by estoppel has not been clearly defined and its application depends upon the unique facts of each case. *See Scott v. Cannon,* 959 S.W.2d 712, 720 (Tex.App.-Austin 1998, writ denied). The rationale for the doctrine was first enunciated by the Texas Supreme Court in *Harrison & Co. v. Boring,* 44 Tex. 255 (1875):

> The owner of land may create an easement by a parol agreement or representation which has been so acted on by others as to create an estoppel in pais. As where he has by parol agreement granted a right of such easement in his land, upon the faith of which the other party has expended moneys which will be lost and valueless if the right to enjoy such easement is revoked, equity has enjoined the owner of the first estate from preventing the use of it.

*Harrison,* 44 Tex. at 267. Thus, the doctrine essentially holds that the owner of the alleged servient estate may be estopped to deny the existence of an easement by making representations that have been acted upon by the owner of the alleged dominant estate. *See Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 209 (Tex.1962).

■■ Three elements are necessary to the creation of an easement by estoppel: 1) a representation communicated, either by word or action, to the promisee; 2) the communication was believed; and 3) the promisee relied on the communication. *See Storms v. Tuck,* 579 S.W.2d 447, 452 (Tex.1979); *Holden v. Weidenfeller,* 929 S.W.2d 124, 131 (Tex.App.-San Antonio 1996, writ denied). An easement by estoppel, once created, is binding upon successors in title if reliance upon the existence of the easement continues. *See Holden,* 929 S.W.2d at 131.

It is undisputed that Newman made over $30,000 in improvements to the land during the 1960's. There is no evidence, however, that these improvements were made in reliance on any express promise. Thus, if we are to find an easement by estoppel, the promise, if any, must have been communicated by actions rather than words. Newman argues the silence of the Lines and Stallmans in the face of her continued use of the road for several decades effectively estops the Stallmans from denying the road is an easement.

The courts of appeals are divided on whether an easement by estoppel (1) can be spawned by mere silence or (2) can occur apart from a vendor/vendee relationship. The Amarillo court of appeals found an easement by estoppel where a landlocked tract had been accessed for more than seventy years via a 400 yard road across appellant's property. *See Wallace v. McKinzie,* 869 S.W.2d 592 (Tex.App.-Amarillo 1993, writ denied). Even though there had never been any unity of title between the two tracts, *i.e.,* no vendor/vendee relationship had ever existed between the owners of the servient and dominant estates, the court held that "through their permissive and acquiescing

---

1. Due to Newman's ill health and advancing age, the suit was brought by Newman's son as next friend. Mrs. Newman died prior to trial, but her son introduced some evidence that she had paid for improvements to the road.

behavior, the [owners of the servient estate] have engaged in representations by their conduct." *Id.*, at 596.

In contrast, the Austin court of appeals has held that passive acquiescence "for no matter how long a period" will not estop a landowner from denying the existence of an easement across his land. *See Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex.App.-Austin 1998, no pet.). Moreover, the Austin court held there must be "a vendor/vendee relationship to establish an easement by estoppel." *Id.*, at 720. The court concluded that the essence of the doctrine is that "the owner of land is estopped to deny the existence of an easement by making representations that are acted upon by a *purchaser* to his detriment." *Id.* (emphasis in original).

In *North Clear Lake Development Corp. v. Blackstock*, this Court held that estoppel can arise, in part, by a failure to act. 450 S.W.2d 678, 684 (Tex.Civ.App.-Houston [14th Dist.] 1970, writ ref'd n.r.e.). In that case, however, there was a vendor/vendee relationship between the owners of the various tracts. There appellant sold several "waterfront" lots to the appellees. However, the appellant retained a strip of land separating the lots from the water. Nevertheless, in reliance upon the appellant's misrepresentation, several homeowners constructed docks, boat houses, bulkheads, fences, etc. on the disputed tract. In fact, the appellant even dug a boat slip for one of the lot owners in exchange for a fee. This court held the appellants' "statements, conduct, and *failure to act* [were] calculated to induce all of the adjoining lot owners to believe that [the disputed strip] was available to them for the purpose of enjoying waterfront rights in their lots." *Id.* (Emphasis added).

■ The issue presented here is whether a failure to act, *i.e.*, passive acquiescence in and of itself, can rise to the level of a "misrepresentation" so as to create an easement by estoppel where there has nev-er been any unity of title between the two tracts of land. We find it cannot.

■ An easement cannot normally be created by a parol agreement. *See Miller v. Babb*, 263 S.W. 253, 254 (Tex.1924). Thus, an easement by estoppel is an exception to the statutes requiring a writing. *See Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex.1979). Being a creature of equity, it seeks to prevent injustice and to protect innocent parties from fraud. *Id.* Accordingly, we have previously held that a "failure to act" can in some circumstances induce another to rely upon this perceived "representation" so as to estop the owner from denying an easement. *See North Clear Lake Development Corp.*, 450 S.W.2d at 684. However, we find it significant that in *North Clear Lake Development* the owner's misrepresentation was not found solely in his failure to act; estoppel was also based upon the owner's verbal statements and overt actions. Moreover, the parties were in a vendor/vendee relationship at the time of the misrepresentation.

Here, the evidence is undisputed that Newman made substantial improvements to her land. However, there is nothing in the record before us to show she was induced to make these improvements by any affirmative *misrepresentation*. While the Stallman's gave Newman *permission* to use the road in 1980, permissive use is inconsistent with Newman's claim that she has a legal right to use the road. Newman apparently did not believe she had an easement in 1980 because she did not dispute the Stallmans' authority to grant permission to use the road. Newman does not contend she was deceived or defrauded. Moreover, we know of no duty upon the Stallmans or their predecessors to warn, admonish, or otherwise caution Newman that she should make no improvements without a secure right of ingress and egress appurtenant to her land. *See Roberts v. Allison*, 836 S.W.2d 185, 188 (Tex. App.-Tyler 1992, writ denied) (where there is no vendor/vendee relationship, the own-

er of the allegedly servient estate has no duty to speak, and his continued silence is not an act of overreaching). We find that where, as here, there is no vendor/vendee relationship, an easement by estoppel cannot arise from passive acquiescence alone.[2]

Because no promise or misrepresentation was made to Newman by the Stallmans or their predecessors, there can be no estoppel. Finding the evidence legally insufficient to support a finding of an easement by estoppel, the first point of error is sustained.

### Easement by Prescription

■ In their second point of error number, the Stallmans contend the evidence is legally and factually insufficient to support an easement by prescription.

■ As distinguished from easements by estoppel in which one looks to the intent or actions of the alleged easement's grantor, an easement by prescription rests on the claimant's adverse actions under a color of right. *See Scott*, 959 S.W.2d at 721. A person acquires a prescriptive easement by the open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years. *See Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979).

■ There is no dispute that Newman's and Schilling's use of the road was open and nearly continuous from the early 1930's to 1997. The only issue before us is whether such use was "hostile." The

hostile and adverse character of the use necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. *See Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622, 626 (1950). One general test to determine whether a claim is hostile is whether the adverse possessor's use, occupancy, and possession of the land is of such nature and character as to notify the true owner that the claimant is asserting a hostile claim to the land. *See Scott*, 959 S.W.2d at 722.

■ When claiming title to land, hostility can be shown by the adverse possessor's decision to "designedly enclose" the disputed property by erecting a fence. *See Terrill v. Tuckness*, 985 S.W.2d 97, 108 (Tex.App.-San Antonio 1998, no pet.). While a road or easement is not normally "enclosed," the evidence of hostility must be of equivalent import. There must be a distinct and positive assertion of a right which is brought to the servient owner's attention and which is hostile to the owner's rights. *See Scott*, 959 S.W.2d at 722.

Here, the evidence regarding the road's origins and use is largely undisputed. Nevertheless, the adverse nature of the use, or lack of it, has varied considerably over the decades. The record reflects that sometime in the 1930's F.M. Schilling, his brothers, and hunters began crossing the unfenced pasture land in the Longley Survey to reach the Miller and B.S. & F. Surveys. Texas courts have disagreed re-

2. While an easement by estoppel may not be predicated upon silence alone where there is no vendor/vendee relationship, we are reluctant to hold that a vendor/vendee relationship is a necessary prerequisite to an easement by estoppel where a party has relied to his detriment upon an *affirmative* misrepresentation. If the owner of tract "A" orally grants to the owner of tract "B" an easement across his land in exchange for assistance in erecting a barn, and the owner of tract "B" makes substantial improvements on his land in reliance upon the promised easement, would the elements of easement by estoppel be satisfied even though there had never been any unity of title between tract "A" and tract "B"?

What if the owner of tract "A" orally grants a permanent easement to the owner of tract "B" without any consideration, and the owner of tract "B" makes substantial improvements in reliance upon the representation? Would the elements of easement by estoppel be met even though there was no vendor/vendee relationship between the parties?

We need not decide these issues here. However, because such issues remain unresolved, we decline to hold at this time that easement by estoppel may in no case arise apart from a vendor/vendee relationship.

garding whether uninterrupted use alone will give rise to a prescriptive easement. There is some authority that the open, unmolested, and continuous use of a roadway for more than ten years raises a rebuttable presumption that the use was non-permissive, under a claim of right, and thus adverse. *See Johnson v. Dale,* 835 S.W.2d 216, 219 (Tex.App.-Waco 1992, no writ.). Contrary authority suggests that mere use alone will never give rise to a prescriptive easement. *See Rust v. Engledow,* 368 S.W.2d 635, 638 (Tex.Civ.App.-Waco 1963, writ ref'd n.r.e.). Another court has held that use alone will give rise to a prescriptive easement only if the use is exclusive to the claimant. *See Scott,* 959 S.W.2d at 721–22. In other words, the claimant must exclude, or attempt to exclude, all other persons, including the property owner from using the roadway. *See Vrazel,* 725 S.W.2d at 711.

In the early 1950's, the Lines leased the Longley Survey to Oscar Wegenhoft whose sharecroppers used the road for farming the land. In the 1960's the road was used as a field road to access the rice farms on the property. Thus, at least during the 1950's and '60's, use of the road was not exclusive to Schilling or his guests. The Austin court of appeals has held that exclusivity is not essential; however, where there are independent acts apart from continued use of the roadway to show adversity. *See Scott,* 959 S.W.2d at 718. In *Scott,* adversity was shown when the owner of the servient estate learned of an affidavit filed by the claimants in the Hays County Clerk's Office stating that the disputed roadway had become a public thoroughfare. *Id.*

Schilling testified that brush was occasionally cleared to facilitate passage along the roadway and low spots were periodically repaired. He testified he believed he had a right to use the road because the former owners had always used the road. Newman contends these acts are sufficient to demonstrate hostility. However, Schilling did not represent to Newman or her husband that there was any appurtenant right to use the road.

Whether an easement by prescription ripened between the early 1940's and 1979, is unclear. However, beginning in 1980, Newman's conduct indicates her use of the road was permissive. The road was gated beginning sometime prior to 1979. Approximately a dozen locks on the gate demonstrate that use of the road was not exclusive to Newman. Moreover, Roy Stallman removed the locks and notified the Newmans they had his permission to use the road if they wanted to take their lock off the old chain and put it on the new one; Newman did not assert a claim of right. On a subsequent occasion, Roy Stallman notified the Newmans that "4–wheelers" would no longer be allowed on the road. Again, Newman did not assert a claim of right to the road. During the 17–year–period of permissive use, the Stallmans maintained the road without compensation or an offer of assistance from the Newmans. Thus, we find that if a prescriptive easement ripened prior to 1980, it was extinguished in the same manner it was created; for the last 17 years, the Stallmans have openly asserted their claim of right to the road without complaint or opposition by the Newmans.

We find the evidence legally insufficient to sustain the finding of a prescriptive easement. Because there is, as a matter of law, neither an easement by estoppel nor an easement by prescription, the judgment of the trial court is reversed and rendered in favor of the Stallmans.