Opinion issued June 24, 2004












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01354-CV




RAYMOND B. WHALEY AND ELEANOR H. WHALEY, Appellants

V.

CENTRAL CHURCH OF CHRIST OF PEARLAND, 
DAVID L. BEAN, AND GLENN MANCILL, Appellees

* * *
CENTRAL CHURCH OF CHRIST OF PEARLAND, 
DAVID L. BEAN, AND GLENN MANCILL, Appellants

V.

RAYMOND B. WHALEY AND ELEANOR H. WHALEY, Appellees





On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 20067*JG02




MEMORANDUM OPINION
           Plaintiffs, Raymond B. Whaley (Whaley) and Eleanor H. Whaley (together, the
Whaleys), appeal the trial court’s judgment ordering that they remove their sign from
property owned by Central Church of Christ of Pearland (the Church), and defendants, the
Church, David L. Bean, and Glenn Mancill, appeal the trial court’s judgment ordering that
the Whaleys have a non-exclusive private road easement (the road easement) approximately
16 feet wide from Highway 518 to the Whaley’s property. We reverse in part and affirm in
part and remand the cause to the court below. 
BACKGROUND
           In 1976, Raymond Whaley purchased a landlocked, 100-foot by 110-foot lot from
R.R. and Muriel Forrest to build and operate an automobile repair shop. The lot was carved
out of a larger tract of land owned by Forrest. As a part of the negotiations for the purchase
of the lot, Whaley said that he needed an easement for access to the property, water rights,
and a sign easement. The earnest money contract recited the following:
2.Seller agrees to dedicate a ten [foot] (10') wide driveway easement for
entrance and exiting to 46-E 1 on the west side of 46-E running from 46-E to
Highway 518. 
 
3.Seller agrees to allow purchaser to erect a sign at designated location
(designated by seller) on Highway 518.
 
4.Seller agrees to give purchaser the right to drill a water well.
 
. . . .
 
10.Maintenance of private driveway easement and easement itself passes
with the land and all successor owners will honor easement. 

           The deed conveying the lot referenced Exhibit “A” to the deed for a description of the
property. Exhibit “A” described the property by metes and bounds and “a non-exclusive
private road easement for the mutual benefit of Grantor and Grantee, and their heirs and
assigns” by metes and bounds. The deed further provided “that the Grantee may drill a water
well on the subject property.” The deed did not make any reference to a sign or sign
easement. 
           In 1977, Whaley built his shop. He testified that, during the time that the shop was
being built, he discovered that the road easement was too narrow because trucks bringing
supplies to his property were not able to make the turn from Highway 518 to the roadway
without going off the 12-foot culvert that gave access to the private road. He discussed the
problem with Forrest, and Forrest agreed to widen the culvert to 24 feet and to permit
Whaley to widen the easement to 24 feet. Whaley testified that Forrest paid for the widening
of the culvert and Whaley paid for the widening of the roadway. Whaley further testified
that, since that time, he has maintained the road. 
           In 1979, Whaley purchased a 100-foot by 45-foot lot adjacent to the first lot. The
earnest money contract and deed to the second lot referenced the road easement, but neither
referred to a sign or sign easement. Whaley testified that, without the agreement to widen
the road easement, he would not have bought the additional property and that it would not
be possible to operate the business without the widened easement.
           Whaley erected his first sign in 1977. The sign, a metal sign two feet wide and three
feet long, was mounted on a three-foot pole. Whaley testified that he placed it to the left of
the road easement near Highway 518, as instructed by Forrest. That sign lasted until about
1985. 
           In 1985, Whaley replaced his first sign with a 12-foot by 8-foot sign, which he erected
in the same place as the original sign. That sign was damaged in a storm in 1997, and
Whaley replaced it with a metal sign on top of a six-foot-high brick base. Whaley testified
that, without the promise of a sign easement, he would not have purchased the property and
that, without a sign, the shop would not be economically viable. In 1999, Whaley rented his
shop to Chris Persaud, who, with his wife, Lydia, continued the automobile-repair business. 
           In late 1999 or early 2000, the Church rented the property that lay between Whaley’s
lots and Highway 518. The Church used this property as its church facility for about two
years. During that time, leaders and members of the Church were aware of the private road
leading to the repair shop and the sign to the west of the road. In 2002, the Church purchased
the property, including a tract on the west side of the road where the sign was located. In
May 2002, representatives of the Church met with the Whaleys to discuss the sign, which the
Church wanted removed. After the meeting, the representatives sent a letter to Whaley
asking him either to produce a recorded instrument showing his right to place a sign on the
church property or to remove the sign on or before June 1, 2002. Whaley did not respond to
this letter. On June 3, members of the Church took down the sign. 
           The Whaleys sued for a declaratory judgment setting forth an extended road easement
and a sign easement by metes and bounds. They were granted a temporary injunction
permitting them to erect a sign and to keep it in place until the matter was decided. The
Church counterclaimed for damages caused by encroachment beyond the 10-foot road
easement and placement of the sign, for damages for trespass by failing to remove the sign
after being asked to do so, and for a permanent injunction prohibiting the Whaleys from
further encroachments on church property. 
           After a bench trial, the trial court ordered that the Whaleys remove their sign from the
church property, that the Church recover $1.00 as damages for sign encroachment and
trespass, that the Church recover one-half of its attorney’s fees as found by the trial court,
and that the Whaleys have an expanded, non-exclusive road easement that is 16 feet wide,
except for 41 feet nearest Highway 518 where the easement is 20 feet wide. Neither party
requested findings of fact or conclusions of law, and none were filed.


 Both parties have
appealed. 
DISCUSSION
Standard of Review
           When, as here, findings of fact and conclusions of law have been neither requested
nor filed, the reviewing court presumes that the trial court has made all findings of fact
necessary to support the judgment. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). 
In determining whether there is some evidence to support the judgment, the reviewing court
considers only the evidence favorable to the judgment. Id. If the judgment can be upheld
on any legal theory that finds support in the evidence, we must affirm. Id. 
I.        The Whaleys’ Appeal
           In two issues, the Whaleys contend that (1) they established their right to a sign
easement as a matter of law and (2) the trial court’s refusal to declare a sign easement and
the court’s finding that their sign was a trespass were so against the great weight and
preponderance of the evidence as to be manifestly unjust. The Whaleys argue that they
should prevail under the doctrine of estoppel in pais


 because they have established that
Forrest represented to them that they could erect a sign on Highway 518, they believed
Forrest’s representation, and they relied on the representation. 
           The Church responds that the Whaleys did not specifically plead easement by estoppel
and cannot raise that theory of recovery for the first time on appeal. The Church argues that
the Whaleys could have corrected their omission by including easement by estoppel in their
trial amendment. 
           In their petition, the Whaleys pleaded, 
Forrest agreed to allow Plaintiffs to erect a sign, at a location designated by
Forrest, on Highway 518. Plaintiffs relied upon this agreement, and would not
have entered into the purchase of the land described in Exhibit A, but for the
agreement. Forrest designated a location for Plaintiffs’ sign, and the purchase
of the tract described in Exhibit A was consummated.

The Church did not specially except to the Whaleys’ petition. If no exceptions are filed, the
court of appeals construes pleadings liberally in favor of the pleader. Home Sav. of Am. FSB
v. Harris County Water Control and Imp. Dist. No. 70, 928 S.W.2d 217, 218 (Tex.
App.—Houston [14th Dist.] 1996, no writ). 
           The elements of easement by estoppel are (1) a representation was communicated,
either by word or by action, to the promisee, (2) the promisee believed the communication,
and (3) the promisee relied on the communication to his detriment. Stallman v. Newman, 9
S.W.3d 243, 246 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). We conclude that the
Whaleys’ petition, although it did not use the words “estoppel in pais” or “easement by
estoppel,” was sufficient to give the Church fair notice that they were asserting easement by
estoppel as a theory of recovery. 
           The Church also argues that the Whaleys have waived their issues because they did
not challenge the trial court’s finding that the sign was a trespass on the Church’s property. 
The Church refers to one of four fact findings recited in the judgment.
           Separate findings of fact and conclusions of law were not requested and were not filed
as provided in rule 296. See Tex. R. Civ. P. 296. Findings of fact shall not be recited in the
judgment. Tex. R. Civ. P. 299a. When findings of fact are included in the judgment, they
may not be used to support the judgment. Guridi v. Waller, 98 S.W.3d 315, 317 (Tex.
App.—Houston [1st Dist.] 2003, no pet.) (citing Frommer v. Frommer, 981 S.W.2d 811, 814
(Tex. App.—Houston [1st Dist.] 1998, pet. dism’d)). Therefore, the Whaleys were not
required to challenge the trial court’s fact findings recited in the judgment. 
           The Church further contends that easement by estoppel does not apply to this case
because none of the cases cited by the Whaleys applied that theory to a sign. The Church
also argues that, because easement by estoppel is an equitable doctrine seeking to prevent
injustice, it should not be applied in this case because it would be an injustice to force the
Church to advertise Whaley’s body shop when the Church did not sell the property to
Whaley, was not aware of Forrest’s representations to Whaley when it bought the property,
and did not make any misrepresentations that were relied upon by Whaley. 
           The exact nature and extent of the doctrine of easement by estoppel has not been
clearly defined. Storms v. Tuck, 579 S.W.2d 447, 451 (Tex. 1979). However, it is frequently
applied in a few definite categories of suits involving land. Id. Its application depends upon
the unique facts of each case. Stallman, 9 S.W.3d at 246. Generally, the doctrine holds that
the owner of land may be estopped to deny the existence of an easement by making
representations by words or conduct that have been acted upon by a purchaser to his
detriment. Storms, 579 S.W.2d at 451. The doctrine operates as an exception to the statute
of frauds. Id. Once created, an easement by estoppel is binding on successors in title if
reliance upon the existence of the easement continues. Stallman, 9 S.W.3d at 246. 
           In this case, the earnest money contract established that Forrest agreed to allow
Whaley to erect a sign on Highway 518 at a location to be designated by Forrest. Whaley’s
testimony—that he erected a sign at the designated location in 1977, replaced it with a larger
sign in 1985, and replaced it again in 1998—was not controverted. Whaley testified that he
needed the sign easement because his lot was approximately 300 feet from Highway 518 and
that he would not have purchased the lot without such an easement. He testified that he
signed the earnest money contract only after Forrest agreed to Whaley’s three conditions: a
road easement, a sign easement, and water rights. Whaley further testified that he built his
shop on the lot in reliance on Forrest’s promise that Whaley could erect a sign near Highway
518. We conclude that the evidence established the three elements of easement by estoppel
as it relates to the sign. The remaining question is whether the Whaleys continue to rely on
the existence of the easement.
           Two Pearland residents, who had lived there over 40 years and who frequently passed
by the body shop, testified that they did not know of a time when there was not a sign at that
location. Billy Shaw, an elder of the Church and one of those involved in negotiating the
Church’s purchase of the property, testified, as an adverse witness, that he had lived in
Pearland 35 years and that Whaley’s sign had been there as long as he could remember. He
could not say whether there had ever been a time when the sign was not at that location.


 
           In 1999, Whaley leased the body shop to the Persauds, who continued to operate the
business as a body shop. Lydia Persaud, the bookkeeper for the business, testified that they
generally get about 20 new customers each month, but that, during the two weeks after the
church members dismantled the sign, they had only two new customers. She further testified
that, after the sign was replaced by Whaley, they began having from 14 to 20 new customers
a month. Because the Persauds and the Whaleys agree that operating the body shop is not
economically viable without a sign near Highway 518, Whaley has agreed that he will not
enforce the terms of the lease if the sign has to be removed. 
           We conclude that the Whaleys have established as a matter of law that a sign easement
by estoppel was created when they purchased their lot. We further conclude that, because
the Whaleys continue to rely upon the existence of the sign easement, the Church, as the
Forrests’ successor in title, is bound by the easement. 
           We sustain the Whaleys’ first issue. Therefore, we need not reach their second issue.
II.      The Church’s Appeal 
           In its first issue, the Church contends that the trial court erred by ruling that the
widened road easement was an “(adverse) easement by necessity.” This “ruling” is one of
the fact findings recited in the judgment. Therefore, this finding cannot be used to support
the judgment. See Guridi, 98 S.W.3d at 317. We will affirm the judgment on any legal
theory that is supported by the pleadings and the evidence. Worford, 801 S.W.2d at 109. 
Because we conclude that the judgment granting a widened easement can be affirmed on the
theory of easement by estoppel, we need not reach the Church’s first issue challenging the
theories of easement by necessity and prescriptive easement.
           In their petition, the Whaleys pleaded with regard to the road easement,
On or about March 16, 1979, Forrest conveyed to Plaintiffs the land
described in deed marked Exhibit B attached hereto. Prior to the conveyance,
Plaintiffs [had] discussed with Forrest the need for a wider road easement. 
Forrest agreed to let Plaintiffs use such additional space as was necessary. 
Plaintiffs relied on the representation, and but for the representation, would not
have purchased the tract of land described in Exhibit B. 

Thus, by pleading a representation by Forrest and their reliance on that representation, the
Whaleys pleaded the theory of easement by estoppel with regard to the widened road. 
           Whaley’s testimony that he and Forrest agreed to a 24-foot-wide easement and that,
based on that agreement, he paid for the widening of the road, has maintained the road, and
purchased an additional lot adjacent to his original lot is some evidence of Forrest’s promise
of a wider easement, of Whaley’s belief that he would have a wider easement, and of
Whaley’s reliance on Forrest’s promise. Furthermore, Whaley testified to the continuing
reliance on the existence of the widened easement. Thus, Whaley has presented some
evidence to establish each of the elements of easement by estoppel. 
           Accordingly, we overrule the Church’s first issue. 
           In light of our conclusion that the Whaleys established their sign easement as a matter
of law, we need not consider the Church’s second issue regarding the award of one-half of
their attorney’s fees. 
 

CONCLUSION
           We affirm that portion of the judgment ordering that the Whaleys have an easement
as described by metes and bounds in the judgment. 
           We reverse that portion of the judgment ordering that the Whaleys remove their sign
from the Church’s property and render judgment that the Whaleys have a sign easement by
estoppel at the location on which the sign is and has been erected. 
           We remand the cause to the trial court for the determination of a legal description of
the sign easement and for entry of judgment consistent with this opinion.
 
 
                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Justices Taft, Nuchia, and Keyes.