Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
MICHAEL R. MURPHY AND                          ) 
DEBORAH A. JOHNSON,                                 )                  No. 08-03-00494-CV
)
                                    Appellants,                       )                              Appeal from
)
v.                                                                          )                  394th District Court
)
JOHN LONG AND WIFE, RUTH LONG,        )                  of Jeff Davis County, Texas
)
                                    Appellees.                        )                  (TC# 1913)

O P I N I O N

            Michael R. Murphy and Deborah A. Johnson


 appeal from a judgment awarding John and
Ruth Long an easement, reliance damages, and attorney’s fees. Finding no error, we affirm.
FACTUAL SUMMARY
            Michael Murphy and John Long worked together and they and their wives became close
friends. They contemplated buying property together and included a third couple, Rocky Beavers
and Whit Watkins, in their plans. In 1997, the three couples purchased adjoining properties located
along Highway 118 outside of Fort Davis from The Nature Conservancy of Texas, an organization
dedicated to preserving the natural and scenic condition of the land. TNC required them to agree
to a “Conservation Easement” to ensure that the property would be retained predominantly in its
natural and scenic condition. The easement required that roads were to be constructed in such a
manner as to cause the least disturbance to the scenic beauty. The three couples also entered into
a Reciprocal Easement Agreement for the right to use the road which ran from Highway 118 across
all three tracts of land to a common pen area. Initially, they operated the properties jointly and had
access to some pens in a common area. They engaged in business activities such as leasing some
of the pastures, and they shared in the revenues and expenses. They discussed forming a partnership
to operate the three properties but did not formalize their agreement. After Beavers and Watkins
indicated they did not want to be further involved, the Longs and the Murphys submitted an updated
grazing and management plan to TNC. The two couples also shared the cost of drilling a water well
on the Murphy property. 
            The Longs discussed with the Murphys their need for a road easement from the common pens
across the Murphy land to the Longs’ future homesite. The Murphys agreed to grant a written
easement similar to the Reciprocal Easement Agreement. The couples discussed several potential
routes and eventually agreed upon one. They also agreed to share in the cost of building the road
and continued maintenance based upon the pro rata use of the road. Based upon the site chosen by
the Murphys for their home, their pro rata use of the road would have been 12 percent. The Longs
had the 1.03 mile road constructed using native caliche, the same material used to build the
Reciprocal Easement road. The Murphys paid 12 percent of the $10,000 it cost to construct the road
based on the planned site of their home. When the Murphys later changed the location of their home
site, they utilized a greater percentage of the road but did not pay the Longs any additional money. 
The Longs specifically relied upon the Murphys’ promises to grant them a written easement and to
pay their pro rata share of the road costs. 
            After the road was built, the Longs received written notification from TNC on July 27, 1999
that the road violated the Conservation Easement. TNC’s primary objection was the color of the
road. Mr. Long notified Mr. Murphy of the objection. A few weeks later, the Longs submitted a
written proposal to TNC to resolve the problem by reseeding the roadsides with native grasses and
vegetation, and perhaps by coloring the road. The Longs subsequently built up the edges of the road
and reseeded the berm edge of the roadway but did not change the color due to the substantial
expense. On December 14, 2000, TNC sent a letter to the Longs reflecting that it no longer had any
objections to the road given the changes made. Nevertheless, on December 29, 1999, the Murphys
sent a letter to the Longs contending that they had agreed to the road easement based on the Longs’
promise to obtain TNC approval of the road and that prior approval apparently had not been
obtained. Their letter also referenced a dispute between the parties about how costs to maintain the
road would be shared. 
            The disputes could not be resolved and the Longs ultimately filed suit alleging various tort
and contract causes of action based on alleged agreements regarding the use of their properties. They
also sought a declaratory judgment. The Murphys raised the statute of frauds as an affirmative
defense and filed counterclaims alleging fraud, misrepresentation, and breach of fiduciary duty. A
jury found that the Murphys breached their agreement with the Longs to drill a water well on the
Murphy property for their joint use, and awarded damages in the amount of $3,877. The jury also
found that the Longs did not have an enforceable contract with the Murphys to provide them with
a written easement and did not misrepresent or conceal a material fact regarding their intention to
grant a road easement, but it determined that the Longs substantially relied on a promise by the
Murphys to provide a written road easement granting the Longs access to their home site and that
this reliance was foreseeable by the Murphys. It awarded damages to the Longs in the amount of
$1,450. The jury found against the remaining claims, including the counterclaims asserted by the
Murphys. 
            The trial court awarded judgment to the Longs in accordance with the jury’s answers. It
further declared that the Longs and their heirs, successors, and assigns were entitled to a road
easement across the Murphy’s land from the reciprocal easement to the Longs’ home site. The court
awarded attorney’s fees to the Longs, as the prevailing parties, in the amount of $10,000.


 On
appeal, the Murphys restrict their arguments to the award of the road easement and attorney’s fees.
EASEMENT BY ESTOPPEL
            In Issue One, the Murphys challenge the legal and factual sufficiency of the evidence to
support the award of the road easement. The easement by estoppel is based on the jury’s finding that
the Longs substantially relied on the Murphy’s promise to provide a written road easement and that
their reliance was reasonably foreseeable. We will not review the legal or factual sufficiency of the
evidence to support these specific findings because the Murphys do not complain that the evidence
does not support them. Instead, they focus on the absence of two findings which they claim are
necessary to support the award, namely, that a written but unsigned easement existed at the time they
promised to give the Longs an easement and that a vendor-vendee relationship existed between the
parties.
Existence of Written but Unsigned Easement

            Section 26.01 of the Texas Business and Commerce Code provides that a promise or
agreement for the sale of real estate is not enforceable unless the promise or agreement, or a
memorandum of it, is in writing and signed by the person to be charged with the promise or
agreement or by someone lawfully authorized to sign for him. Tex.Bus.&Comm.Code Ann.
§ 26.01 (Vernon 2002). Likewise, the Statute of Conveyances found in Section 5.021 of the Texas
Property Code provides:
A conveyance of an estate of inheritance, a freehold, or an estate for more than one
year, in land and tenements, must be in writing and must be subscribed and delivered
by the conveyor or by the conveyor’s agent authorized in writing.

Tex.Prop.Code Ann. § 5.021 (Vernon 1984).
            The easement which the Murphys promised to grant is one which attaches to the land itself
and passes with it, and thus, is an easement appurtenant to the land. See Drye v. Eagle Rock Ranch,
Inc., 364 S.W.2d 196, 203 (Tex. 1963). As such, it is an interest in land which requires a writing
to create or transfer. Tex.Prop.Code Ann. § 5.021; Drye, 364 S.W.2d at 203; West Beach Marina,
Ltd. v. Erdeljac, 94 S.W.3d 248, 264 (Tex.App.--Austin 2002, no pet.). The Longs, however, rely
on the doctrine of easement by estoppel, or estoppel in pais


 as it is sometimes called, to avoid the
statutes of frauds and conveyances. See Drye, 364 S.W.2d at 209 (noting that this doctrine is one
exception to the requirement of a writing to create an easement).
            More than 125 years ago, the Supreme Court first articulated the rationale for the doctrine
of easement by estoppel:
The owner of land may create an easement by a parol agreement or representation
which has been so acted on by others as to create an estoppel en pais. As ‘where he
has by parol agreement granted a right to such easement in his land, upon the faith
of which the other party has expended moneys which will be lost and valueless if the
right to enjoy such easement is revoked, equity has enjoined the owner of the first
estate from preventing the use of it.’

Harrison & Co. v. Boring, 44 Tex. 255, 267-68 (1875). The doctrine essentially holds that the owner
of the alleged servient estate may be estopped to deny the existence of an easement by making
representations that have been acted upon by the owner of the alleged dominant estate. Stallman v.
Newman, 9 S.W.3d 243, 246 (Tex.App.--Houston [14th Dist.] 1999, pet. denied), citing Drye, 364
S.W.2d at 209. It is grounded on the notion that justice forbids one to gainsay his own acts or
assertions. Wallace v. McKinzie, 869 S.W.2d 592, 595 (Tex.App.--Amarillo 1993, writ denied). 
Estoppel arises when one is not permitted to disavow his conduct which induced another to act
detrimentally in reliance upon it. Id. 
            The extent of the doctrine of estoppel in pais has not been clearly defined and its application
depends on the unique facts of each case. Storms v. Tuck, 579 S.W.2d 447, 451 (Tex. 1979); Drye,
364 S.W.2d at 203; Stallman, 9 S.W.3d at 246. Three elements are necessary to the creation of an
easement by estoppel: (1) a representation, communicated, either by word or action, to the promisee;
(2) the communication was believed; and (3) the promisee relied on the communication to his
detriment. Stallman, 9 S.W.3d at 246; see Storms, 579 S.W.2d at 451 n.3; Drye, 364 S.W.2d at
209-10. 
            Citing “Moore” Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934 (Tex. 1972), the
Murphys maintain that the jury’s findings do not support the award of an easement by estoppel
because the jury was not asked to--and did not--find that a written easement agreement existed at the
time of the promise. Consequently, they argue that the Longs have failed to establish this exception
to the statute of frauds.
            In “Moore” Burger, the plaintiff leased property from the City of Austin and built a
restaurant on it. Id. at 937. The Ing estate owned a small tract of land which adjoined the City tract. 
 Dowd and Craus were in the business of buying property and selling it to oil companies for service
station sites. They obtained an option from the Ing estate to buy the property. At the same time, the
City became interested in selling the tract it had leased to “Moore” Burger and it informed the
company president, W.D. Scallon, of its wishes. Scallon notified the City that “Moore” Burger
wished to bid on the property and he took steps to secure financing. Dowd and Craus approached
Scallon and told him of their plans to buy the two tracts of land. Id. at 937-38. They represented to
him that they would construct a new building on the property and lease it to “Moore” Burger for
twenty years. Scallon agreed to their plan and as a result did not bid on the property. A lease was
drawn up by Craus’s attorney and after changes were made by Scallon’s attorney, Scallon signed it. 
Despite their promises, Craus and Dowd did not sign the lease. It later came to light that the entire
time these negotiations were ongoing, Dowd and Craus had a contract to sell the property to an oil
company which planned to build a service station for Phillips Petroleum. Phillips subsequently
bought the contract of sale and refused to honor the lease with “Moore” Burger. Id. at 938. “Moore”
Burger filed suit for breach of contract and the defendants raised the statute of frauds as a defense. 
Id. at 935. The trial court granted summary judgment in favor of the defendants on their affirmative
defense and the court of appeals affirmed. Id. The Supreme Court reversed, finding fact issues with
respect to “Moore” Burger’s claims of promissory estoppel. Id. at 938. Citing Hooks v.
Bridgewater, 111 Tex. 122, 229 S.W. 1114 (1921), the court concluded that enforcement of the
statute of frauds under these circumstances would amount to fraud. Id. at 938. The court further
found that Phillips had constructive notice or would have known of “Moore” Burger’s lease had it
made a reasonable inquiry. Id. at 939. In its opinion on rehearing, the Supreme Court clarified that
it had not applied the doctrine of promissory estoppel to an oral promise but had instead applied it
to the defendants’ promise to sign a written agreement already in existence. Id. at 940 (op. on reh’g).
            The Supreme Court followed “Moore” Burger in Nagle v. Nagle, 633 S.W.2d 796 (Tex.
1982). The divorce decree required Mr. Nagle, an attorney, to pay the monthly mortgage payment
on the Nagle residence and Mr. Nagle retained his one-half interest in the residence. Id. at 798. 
Ms. Nagle filed a contempt motion after Mr. Nagle missed four child support payments. On the
morning of the scheduled hearing on the motion, Ms. Nagle agreed to forego the hearing and waive
one month of child support in consideration for Mr. Nagle’s one-half interest in the residence. Mr.
Nagle also agreed to pay the child support payments he had missed and to increase his future child
support payments in an amount sufficient to pay the mortgage payment. He returned to his law
office to draft a deed conveying his interest but shortly thereafter announced a change of heart and
he refused to convey his interest in the property. Ms. Nagle did not reschedule her contempt motion
and Mr. Nagle subsequently paid the past-due child support payments and continued to make the
monthly mortgage payment. Ms. Nagle filed suit, alleging common law fraud and promissory
estoppel. She sought specific performance of the agreement or damages resulting from Mr. Nagle’s
failure to perform. A jury found in favor of Ms. Nagle and awarded her damages equal to the
amount of Mr. Nagle’s interest in the residence. The court of appeals affirmed, finding that Ms.
Nagle had established her cause of action for common law fraud. However, it also concluded that
her promissory estoppel theory of recovery would not support the judgment. Nagle v. Nagle, 617
S.W.2d 811 (Tex.Civ.App.--Houston [14th Dist.] 1981). The Supreme Court reversed and rendered
a take nothing judgment. Citing “Moore” Burger, the court held that Ms. Nagle’s failure to obtain
a jury finding that Mr. Nagle promised to sign an instrument which complied with the statute of
frauds precluded her recovery under the promissory estoppel doctrine. Nagle, 633 S.W.2d at 800. 
The court further held that Ms. Nagle did not establish her cause of action for common law fraud,
presumably because the facts of the case did not fall within the exception discussed in Hooks v.
Bridgewater. See Nagle, 633 S.W.2d at 800.
            The rule developed in “Moore” Burger and Nagle has been applied in various contexts, but
it has not been applied to a case involving easement by estoppel. See e.g., Exxon Corporation v.
Breezevale Limited, 82 S.W.3d 429, 438-39 (Tex.App.--Dallas 2002, pet. denied)(agreement
between oil company and local liaison to share in risks, losses, production, and profits from oil
development); Sonnichsen v. Baylor University, 47 S.W.3d 122, 125-26 (Tex.App.--Waco 2001, no
pet.)(university’s alleged promise to give all head athletic coaches two-year written contracts). 
Courts have continued to review easements by estoppel under Harrison & Co. v. Boring and its
progeny, Drye and Storms. See e.g., Schilhab v. Dierlam, 2004 WL 1797585, No. 13-03-00185-CV
(Tex.App.--Corpus Christi Aug. 12, 2004, no pet.); Stallman, 9 S.W.3d at 246; Scott v. Cannon, 959
S.W.2d 712, 720 (Tex.App.--Austin 1998, pet. denied); Wallace v. McKinzie, 869 S.W.2d 592, 595
(Tex.App.--Amarillo 1993, writ denied). None of these cases imposed a requirement that the party
claiming the easement prove the existence of a written but unsigned document creating an easement
and we decline to graft that requirement on the doctrine.
            In “Moore” Burger, Breezevale, Sonnichsen and other cases cited by the Murphys, the
agreements at issue had numerous essential elements. In the absence of a written agreement, one or
more of those elements would have to be established by parol evidence. Thus, “Moore” Burger
imposed the requirement that the written agreement containing all of these elements be in existence
at the time of the promise to sign. An agreement to provide a road easement is distinguishable from
the agreements in the cases relied on by the Murphys. If a party agrees to provide another with an
easement for a particular purpose, there are no other required elements which would have to be
supplied by parol evidence. The Murphys complain that the agreement is incomplete because the
parties did not reach an agreement with respect to the width of the easement, but that is not an
element which would have to be supplied by parol evidence. It is a well settled rule that where the
grant does not state the width of the right-of-way created, the grantee is entitled to a suitable and
convenient way sufficient to afford ingress and egress to the owner of the dominant estate. Crawford
v. Tennessee Gas Transmission Company, 250 S.W.2d 237, 240 (Tex.Civ.App.--Beaumont 1952,
writ ref’d), citing 28 C.J.S., Easements, § 77, page 757. What is suitable depends on the purpose
of the easement. If the grant states merely the object for which the easement is granted, dimensions
which are reasonably sufficient for that purpose must be inferred. Id.
            The Murphys orally agreed to grant the Longs a road easement and the parties agreed on the
route after discussing various alternatives. The parties did not specify the width of the road but, as
we have noted, that is not a necessary element of the agreement. Because there are no missing terms
of the agreement which must be supplied by parol evidence, “Moore” Burger is inapplicable and
we decline to apply it. 
Vendor-Vendee Relationship
            The Murphys also allege that the Longs were required to prove the existence of a vendor-vendee relationship in order to establish an easement by estoppel. The Austin Court of Appeals has
held that a vendor-vendee relationship is required to establish an easement by estoppel. Scott, 959
S.W.2d at 721. It reached this conclusion after focusing on the following language found in Storms:
As generally stated, the doctrine holds that the owner of land may be estopped to
deny the Existence [sic] of an easement by making representations that have been
acted upon by a purchaser to his detriment. 

Storms, 579 S.W.2d at 451, citing Drye, 364 S.W.2d at 209. Although Storms acknowledges that
applying the doctrine of easement by estoppel outside of the vendor-vendee relationship is “rare and
nebulous,” the Third Court of Appeals is the only court to hold that the doctrine never applies
outside of the vendor-vendee relationship. The Fourteenth Court of Appeals questioned this
conclusion in Stallman v. Newman, but it ultimately did not reach the question. Stallman, 9 S.W.3d
at 248 n.2. Because both Storms and Drye involved a claim by a purchaser of property, it would
have been natural for the court to state the doctrine in terms of a purchaser. We do not read Storms
or Drye as holding that an easement by estoppel can never exist unless there is a vendor-vendee
relationship between the parties. We decline to follow Scott. 
            The Longs alleged and proved that they substantially relied to their detriment on a promise
by the Murphys to provide them with a written and signed road easement. The Longs expended
$10,000 to build the road and the Murphys, who use a portion of the road to get to their own home
site, have refused to provide the written easement. The jury’s findings are sufficient to establish an
easement by estoppel. Issue One is overruled.
DOUBLE RECOVERY
            In Issue Two, the Murphys contend that the Longs are not entitled to both reliance damages
and the award of an easement because it amounts to a double recovery. They argue that the easement
is improper inasmuch as the jury found no enforceable contract. While that is certainly true, the jury
did find the elements necessary for the imposition of an easement by estoppel. The Longs paid
$10,000 for the construction of the road with the understanding they would be awarded a written
easement and the parties would share in the cost of the road on a pro rata basis. The Murphys,
whose home is located approximately halfway between the common easement and the Longs’ home
site, paid them $1,667. The jury awarded the Longs an additional $1,450 in damages. If the Longs
are not awarded the easement, their expenditure of nearly $7,000 to build the section of the road
leading to their home site is without any value whatsoever. The doctrine of easement by estoppel
prevents this inequity. Finding no double recovery, we overrule Issue Two.
ATTORNEY’S FEES
            In Issue Three, the Murphys argue that the court abused its discretion in awarding attorney’s
fees under the Declaratory Judgment Act. They claim the Longs are not the prevailing party because
they are not entitled to a declaratory judgment. The Uniform Declaratory Judgments Act provides
that a court may award reasonable and necessary attorney’s fees as are equitable and just. 
Tex.Civ.Prac.&Rem.Code Ann. § 37.009 (Vernon 1997). Fee awards under the Uniform
Declaratory Judgments Act are left to the trial court’s sound discretion, subject to the requirement
that any fees awarded be reasonable and necessary--which is a question of fact--and that the fees be
equitable and just--which is a question of law. Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998). 
In reviewing an attorney fee award under the Act, we must determine whether the trial court abused
its discretion by awarding fees when there was insufficient evidence that the fees were reasonable
and necessary or were equitable and just. Id. Because we have already determined that the trial
court did not err in granting a declaratory judgment, this argument fails. We overrule Issue Three
and affirm the judgment of the trial court.



May 12, 2005                                                              /s/ Ann Crawford McClure 
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 5
McClure, Chew, D., and Chew, L., JJ.
Chew, L., J. (sitting by assignment)