In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00012-CR


______________________________




ALEX JOHNSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 36251-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 After the trial court denied his motion to suppress evidence, Alex Johnson pled guilty to the
charge of aggravated assault and submitted the issue of punishment to the trial court. The trial court
sentenced Johnson to fifteen years' imprisonment. Johnson now appeals, raising three points of
error, but a problem with our jurisdiction prevents us from reaching the merits of those issues. For
the reasons stated below, we dismiss this case for want of jurisdiction.

 The clerk's record in this case shows that, after the trial court had formally sentenced
Johnson, he executed a document entitled "Waiver of Motion for New Trial and Right of Appeal." 
In this waiver, Johnson acknowledged his right to appeal, but affirmatively (and with his trial
counsel's permission) waived that right. Johnson further acknowledged this waiver was made
"voluntarily, knowingly and intelligently." The trial court did not thereafter grant Johnson
permission to appeal. 

 Under Texas law, a defendant in a noncapital case may waive any right secured by Texas law. 
Tex. Code Crim. Proc. Ann. art. 1.14(a) (Vernon 2005). A defendant may even waive the right
to appeal. Dorsey v. State, 84 S.W.3d 8, 10 (Tex. App.--Texarkana 2002, no pet.). A valid waiver
of appeal deprives the appellate court of jurisdiction to consider the merits of the appeal. Id. (citing
Clayburn v. State, 985 S.W.2d 624, 625 (Tex. App.--Waco 1999, no pet.). "No attack on the waiver
of the right to appeal will be entertained in the absence of factual allegations supporting the claim
that the waiver was coerced or involuntary." Id. (citing Ex parte Tabor, 565 S.W.2d 945, 946 (Tex.
Crim. App. 1978)).

 On the authority of Willis v. State, 121 S.W.3d 400 (Tex. Crim. App. 2003), Johnson argues
that, despite the waiver of appeal, he was granted permission to appeal by the trial court. In Willis,
the Texas Court of Criminal Appeals held that an order granting permission to appeal was effective
even when the defendant had previously executed a waiver of appeal. Id. at 403.

 Johnson's argument originates from the several trial court certificates concerning his right
of appeal. Judge Harold Entz conducted Johnson's plea hearing, punishment trial, and sentencing. 
Johnson entered a plea of no contest December 10, 2007. On that same day, Judge Entz, Johnson,
and his attorney signed the form "Trial Court's Certification of Defendant's Right of Appeal." The
form allows the trial court to check one of the following applicable to the case: 

 ____ is not a plea bargain case, and the defendant has the right of appeal;

 ____ is a plea bargain case, but matters were raised by written motion filed
and ruled on before trial and not withdrawn or waived, and the
defendant has the right of appeal;

 ____ is a plea bargain case, but the trial court has given permission to
appeal, and the defendant has the right of appeal;

 ____ is a plea bargain case, and the defendant has NO RIGHT OF
APPEAL;

 ____ the defendant has waived the right of appeal.


None of the statements were marked as applicable to this case. 

 The next day, a trial on punishment began and continued until December 14, 2007. At that
time, final statements were presented and punishment was imposed. Also on December 14, Johnson
executed the waiver of motion for new trial and right of appeal. The waiver states that it was signed
after "conviction" and "punishment was imposed." Johnson gave notice of appeal January 14, 2008,
and on January 30, 2008, Judge Alvin Khoury signed another certification indicating that the case
was not a plea bargain and the defendant had the right of appeal. This certificate was not signed by
Johnson or his counsel. On April 3, 2008, Judge Khoury signed a third certification with the same
notation as Khoury's previous certificate. The last certification was also signed by Johnson and his
attorney. 

 We find the facts here are substantially different from those in Willis. In Willis, it was clear
throughout the proceedings the defendant had motions filed and ruled on which would be preserved
for appeal. Here, there is no discussion in the record by the attorneys, the judge, or Johnson that
Johnson was attempting to preserve issues on appeal. Further, in Willis the defendant signed a
waiver in conjunction with the admonishments at the time of his guilty plea; here, a separate
document waiving appeal was signed after sentence had been imposed. Finally, in Willis, the trial
court specifically granted the defendant permission to appeal ("the trial court expressly and in writing
granted permission for appellant to appeal . . . ." ). Id. 

 Here, none of the judicial certifications expressly grant Johnson the right to appeal. At most,
Judge Khoury's certificate recognized that the case was not based on a negotiated plea and under the
law an appeal was available. See Tex. R. App. P. 25.2(a), (b); Tex. Code Crim. Proc. Ann. art.
44.02 (Vernon 2006). Since Judge Entz's order had marked none of the options shown above, it
granted no permission to appeal. Judge Khoury, who did not try the case, certified that it did not
involve a negotiated plea and "defendant has the right of appeal," but the order did not grant him
permission to appeal. It is one thing to recognize (even if in error) that, under the law, a defendant
has the right to appeal, but something altogether different to grant permission for a defendant to
appeal. Nothing in the judicial certifications grants Johnson permission to appeal and therefore does
not negate or displace Johnson's waiver of appeal. Even after finding the waiver to be operative,
Johnson is entitled to a consideration of any factual allegations that the waiver of appeal was
involuntary. See Tabor, 565 SW 2d at 946. 

 Johnson asserts the waiver was involuntary only because there is no audio or reporter's record
of the process in which he executed the waiver. Experience teaches that waivers are often signed
outside the range of hearing by the State, the trial court, and even the court reporter--perhaps at the
quiet of counsel table, where the accused and defense counsel may engage in private discussion. 
Thus, it is typically impossible for such attorney-client discussions to be recorded by the court
reporter. Nor is the court reporter required to make a record of such private attorney-client
conversations absent specific consent and request by the accused.

 In Tabor, the Texas Court of Criminal Appeals specifically noted that the habeas applicant
had failed to marshal any evidence to support an assertion of coercion or involuntariness in
connection with his waiver of the right to appeal. Id. This despite the fact that he had such an
opportunity at the hearing before the trial court on his application. Similarly, Johnson did not request
a hearing on a motion for new trial, and he has directed our attention to no evidence to support his
appellate claim of involuntariness. (1)

 Absent any formal requirement that an accused and defense counsel make a recording of their
discussions about the waiver of appeal, what remains is Johnson's bare assertion of involuntariness. 
He directs our attention to nothing in the appellate record that would support or suggest
involuntariness. Nor have we found any such evidence. Nor does the mere absence of a record of
Johnson's discussion with his trial counsel about the process of signing the waiver of his right to
appeal inherently demonstrate involuntariness.

 We, therefore, conclude Johnson's waiver of his right to appeal is valid and binding, and we
dismiss this appeal for want of jurisdiction. 



 Jack Carter

 Justice

Date Submitted: September 3, 2008

Date Decided: September 5, 2008

Do Not Publish
1. We acknowledge that Johnson also waived his right to file a motion for new trial, and
thereby arguably waived his right to a hearing on such a motion. If the joint waiver of new trial and
appeal was truly involuntary, as Johnson now contends on appeal, we see no reason why he would
not have filed a motion for new trial and sought a hearing in the trial court on that motion, despite
having otherwise waived that right.



was able to do so only after the land had been cleared, with permission of the owner,
through an open pasture and a gap in the fence, and not with a full-sized vehicle, but only
on a four-wheeler. There is no testimony that the fifty-acre Alexander tract has any access,
through the Busher or any other adjacent property, to a public road, particularly County
Road 329, except through the Tiller-Nevins property, the former Burns tract. Compare
Benedictine Sisters v. Ellison, 956 S.W.2d at 632. Thus, the trial court's finding that the
second element, that of necessity rather than mere convenience, has been satisfied, and
is supported by legally and factually sufficient evidence.

 However, we find there is no evidence that such necessity existed at the time of the
severance of the dominant and servient estates. Thus, the third requirement for an
easement by necessity has not been established. Such element must be shown, id., and
absent evidence regarding this matter, an easement by necessity may not be imposed. 
Machala v. Weems, 56 S.W.3d at 756; Heard v. Roos, 885 S.W.2d at 595-96. There is
no evidence whatsoever that, on the date of the severance, the tract ultimately acquired
by Lake Alexander Properties was a landlocked property, or had no access to a public
road. Without such evidence, an easement by necessity cannot be established. 
Benedictine Sisters v. Ellison, 956 S.W.2d at 632. Thus, the trial court erred in finding that
Lake Alexander Properties had established the required elements of an easement by
necessity. 

 In issues four through ten, Tiller and Nevins challenge the trial court's finding that
Lake Alexander Properties established an easement by prescription. An easement by
prescription rests on the claimant's actions under a color of right. A person acquires a
prescriptive easement by the open, notorious, continuous, exclusive, and adverse use of
someone else's land for ten years. Mack v. Landry, 22 S.W.3d 524, 531 (Tex.
App.-Houston [14th Dist.] 2000, no pet.); Stallman v. Newman, 9 S.W.3d 243, 248 (Tex.
App.-Houston [14th Dist.] 1999, pet. denied). To establish an easement by prescription,
the claimant must show that his use of land was: 1) open and notorious; 2) adverse to the
owner's claim of right; 3) exclusive; 4) uninterrupted; and 5) continuous for a period of ten
years. Toal v. Smith, 54 S.W.3d at 435. If there is a failure to establish any of these
essential elements by a preponderance of the evidence, the claim of easement cannot be
maintained. Brooks v. Jones, 578 S.W.2d 669, 674 (Tex. 1979). 

 Burdening another's property with a prescriptive easement is not well-regarded in
the law. Toal v. Smith, 54 S.W.3d at 435. The hostile and adverse character of the use
is the same as that necessary to establish title by adverse possession. One test to
determine whether a claim is hostile is whether the claimant's use, occupancy, and
possession of the land is of such a nature and character as to notify the true owner that the
claimant is asserting a hostile claim. Mack v. Landry, 22 S.W.3d at 531; Stallman v.
Newman, 9 S.W.3d at 248. 

 To determine if there is legally sufficient evidence to support a finding, we consider
only the evidence supporting the finding. Alexander testified that he remembered using
the roadway in question when he was young; he also testified that he went there when he
was young only every couple of years. The road in question is the way that the foresters
used. This evidence establishes none of the required elements for a prescriptive
easement. It fails to show that Lake Alexander Properties' or its predecessors in title's use
was open and notorious, adverse to the claim of right of the then-owner of the Burns Estate
tract, exclusive, uninterrupted, or continuous for a ten-year period. Thus, it is legally
insufficient to support a finding of easement by prescription. Alexander himself testified
that there was oil field activity at that location, with a lot of people going in and out. Nevins
stated that the "oil field road" that traversed the Burns Estate tract was their main road of
travel across the tract. He testified that Texaco had for a long time used the road for oil
field activity and was presently using the road for drilling a new well and pipeline. The
Anderson family lived right by the gate, and they used the road continuously. Deer hunters
used the road. Adjacent property owners used the road. All of this use was with the
knowledge and consent of the true owners of the property. It has long been the law in
Texas that, when a landowner and the claimant of an easement both use the same way,
the use by the claimant is not exclusive of the owner's use and therefore will not be
considered adverse. Brooks v. Jones, 578 S.W.2d at 673; see also Vrazel v. Skrabanek,
725 S.W.2d 709, 711 (Tex. 1987). The easement claimant must exclude, or attempt to
exclude, all other persons, including the true property owner, from using the roadway. 
Stallman v. Newman, 9 S.W.3d at 249. Joint continuous use, without a legally adverse or
hostile act, is not sufficient. Mack v. Landry, 22 S.W.3d at 532. This same evidence also
fails to show that any use by Lake Alexander Properties would be adverse to any claim of
right by the property owner. We find there is no evidence to support all of the essential
elements necessary to establish an easement by prescription.

 The trial court also made a finding that Tiller and Nevins recognized and accepted
the easement now claimed by Lake Alexander Properties when they acquired title to their
land. This finding is based on a clause in the deed of the Tiller-Nevins land executed by
Don Long and wife to Robert C. Tiller and wife on August 13, 1992. The clause is a
standard exception to warranty that reads as follows:

 SAVE AND EXCEPT AND SUBJECT TO all easements and rights-of-way of
record or which are apparent on the ground which burden the above
described tract, with all privileges appurtenant thereto.

 

This clause, as noted, is a standard exception in a warranty, and in no way created any
right in Lake Alexander Properties or its predecessors in title, all strangers to the deed. 
The road running over the Tiller-Nevins land, which Lake Alexander Properties now
attempts to claim, was not at the time of the deed, nor is it now, an easement burdening
that land, but a portion of the land itself that was being purchased by Tiller in 1992.

 For the reasons stated, we reverse the judgment and here render judgment that
Lake Alexander Properties, Ltd., take nothing.


 William J. Cornelius*

 Justice


Date Submitted: May 3, 2002

Date Decided: December 23, 2002


Publish


*Chief Justice, Retired, Sitting by Assignment