NUMBER 13-07-272-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


TIMOTHY R. O'LEARY, Appellant,


v.


BRENT J. COLEMAN, M.D., Appellee.

 


On appeal from the 197th District Court of Cameron County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Garza and Benavides


Memorandum Opinion by Justice Garza


 

 This suit involves a dispute over the existence of an easement burdening property
in the town of South Padre Island. In an attempt to sell a parcel of bay-front property and
to extinguish any encumbrances on the property, appellee, Brent Coleman, M.D., filed a
declaratory judgment and trespass to try title action against appellant, Timothy O'Leary,
seeking to declare O'Leary's alleged easement invalid. In response, O'Leary filed a
general denial and a counterclaim requesting a judicial declaration that he had a valid
easement over Coleman's property. By three issues, O'Leary contends that the trial court
erred in granting Coleman's traditional motion for partial summary judgment because: (1)
he raised material fact issues as to his claim for an easement by estoppel; (2) he raised
material fact issues with regard to his claim for an easement by implication; and (3) he
established an easement as a matter of law within the context of the deed to Coleman's
property. We reverse and remand for proceedings consistent with this opinion.

I. Factual and Procedural Background

 This dispute pertains to three lots and a forty-foot pier located on or near Laguna
Madre in South Padre Island, Texas. Coleman is the owner of Lot 1, a bay-front lot on the
Laguna Madre. Coleman acquired Lot 1 by warranty deed from Warren Lee Walsh and
Carolyn L. Walsh on or about June 1, 1992. On or about January 10, 1997, O'Leary
acquired title to Lots 3 and 4--located inland from Lot 1 along Mars Street--by warranty
deed from Richard J. O'Leary. 

 Attached to the southwestern-most corner of Lot 1 is O'Leary's pier, which extends
forty feet into the Laguna Madre and is supported by pillars sunk into the sea floor. 
O'Leary has owned, used, and maintained this pier for at least eighteen years. (1) In order
to access the pier, O'Leary must walk from Mars Street across the "southwestern-most
corner of Lot 1 for about six to ten feet." 

 On September 29, 1995, Coleman granted O'Leary permission in writing to cross
over his property to access the pier. Specifically, Coleman's written permission ("Right of
Way agreement") provided, in relevant part:

 Mr. Timothy O'Leary has been given Right of Way to the dock extending
from the edge of my property to the Laguna Madre. The use, maintenance
and liability of this structure is solely his responsibility. . . .


The document reflects that it was recorded in the Cameron County public records on
August 17, 2004, and that it was received by the Texas General Land Office on May 10,
1996. 

 This conflict arose on October 29, 2004, when Coleman provided O'Leary with a
letter terminating permission to use Lot 1 to access the pier. At this time, Coleman notified
O'Leary of his intention to sell the property and his desire to remove any potential
encumbrances on the property.

 On April 1, 2005, Coleman filed a petition for declaratory judgment and an
application for a temporary restraining order and injunction. In his petition, Coleman (1)
sought an interpretation of the Right of Way agreement by the trial court; (2) asserted that
O'Leary had become a trespasser by continually using his property to access the pier; (3)
contended that he lost two sales of the property because O'Leary slandered his title to Lot
1, resulting in at least $100,000 in damages; and (4) argued that he had suffered
irreparable harm because O'Leary refused to recognize the revocation of the Right of Way
agreement and continued to trespass on his property. (2) Coleman also argued that the Right
of Way agreement constituted a licensing agreement, not an easement, thereby
temporarily allowing O'Leary to cross over his property to access the pier. Because he
merely granted O'Leary a license to cross over his property, Coleman asserted that he
could revoke the license at any time. 

 On June 3, 2005, Coleman filed a motion for partial summary judgment as to his
declaratory judgment action advancing the same licensing argument made in his petition
for declaratory judgment. Further, Coleman noted that as a result of O'Leary's continuing
trespass, he suffered irreparable harm that could not be readily calculated but required
judicial intervention to mitigate damages. 

 Subsequently, on July 26, 2005, O'Leary filed his first amended answer and
counterclaim, denying all of the allegations contained in Coleman's petition and asserting
that he had acquired an easement by estoppel or by implication to cross over Coleman's
property to access the pier. O'Leary contended that from 1987 to 2005, he and his family
continuously traveled across the southwestern-most corner of Lot 1 for purposes of ingress
to and egress from the pier. (3) O'Leary also argued that he and his predecessors-in-interest
spent money on the State's leasing fees, maintenance costs, taxes, insurance premiums,
and improvements for the pier in reliance on promises and assurances made by both the
Walshes and Coleman that they could use the southwestern-most corner of Lot 1 to
access the pier.

 On July 29, 2005, Coleman filed an amended motion for partial summary judgment
asserting the same contentions made in his original motion for partial summary judgment
and adding grounds addressing O'Leary's counterclaim that he had an easement by
estoppel. Specifically, Coleman stated that the trial court could look to the Right of Way
agreement to determine the rights of the parties and that the Right of Way agreement
contemplated that O'Leary would be responsible for the maintenance and the liability of the
dock; therefore, O'Leary "cannot now complain about his reliance on a promise when he
assumed responsibility to maintain and insure the dock." Additionally, Coleman contended
that (1) O'Leary did not provide sufficient evidence to establish that he was the owner of
the dock, and (2) O'Leary did not "allege or prove that the dock itself was constructed by
the owner of Lots 3 and 4 in reliance on some promise from the owners of Lots 1 and 2 to
grant some kind of access or easement."

 On August 3, 2005, the trial court conducted a hearing on Coleman's amended
motion for partial summary judgment, Coleman's petition for declaratory and injunctive
relief, and O'Leary's amended answer and counterclaim. On January 11, 2006, the trial
court granted Coleman's motion for partial summary judgment and made the following
findings: (1) the Right of Way agreement was terminated by Coleman's letter dated
October 29, 2004; therefore, O'Leary was no longer licensed to use Lot 1 to access the
pier; (2) O'Leary was guilty of trespass; (3) O'Leary slandered Coleman's title; therefore,
Coleman was entitled to damages to be determined by the finder of fact; and (4) Coleman
was entitled to reasonable and necessary attorney's fees in the amount of at least $7,000. 

 On January 29, 2007, Coleman filed a motion to sever his declaratory judgment
action from the underlying slander of title and damages case. The trial court granted 
Coleman's motion to sever on February 9, 2007, and assigned the declaratory judgment
action a new cause number. This appeal ensued.

II. Standard of Review

 The function of summary judgment is to eliminate patently unmeritorious claims and 

defenses, not to deprive litigants of the right to a trial by jury. Tex. Dep't of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (citing Casso v. Brand, 776 S.W.2d 551, 556
(Tex. 1989)); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.-Corpus Christi 2003, no
pet.). We review de novo a trial court's grant or denial of a traditional motion for summary
judgment. Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing
Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); Alaniz,
105 S.W.3d at 345.

 Under a traditional motion for summary judgment, the movant must establish that
no material fact issue exists and that it is entitled to judgment as a matter of law. Tex. R.
Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Alaniz,
105 S.W.3d at 345; Mowbray v. Avery, 76 S.W.3d 663, 690 (Tex. App.-Corpus Christi
2002, pet. denied). After the movant produces evidence sufficient to show it is entitled to
summary judgment, the non-movant must then present evidence raising a fact issue. See
Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). We "must examine the entire record
in the light most favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts against the motion." Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex.
2006) (per curiam); see City of Keller v. Wilson, 168 S.W.3d 802, 824 (Tex. 2005). 

III. Analysis

1. Easement by Estoppel

 In his first issue, O'Leary contends that the trial court erred in granting Coleman's
motion for summary judgment because he had established an easement by estoppel
burdening Lot 1. Specifically, O'Leary argues that his affidavit chronicling the existence of
the alleged easement was sufficient to raise a fact issue. O'Leary further argues that the
Right of Way agreement was not a license and was executed for the sole purpose of
satisfying the State of Texas's requirement that O'Leary have a property interest in bay-front property before it leased the submerged land upon which the pier sits. Finally,
O'Leary asserts that Coleman is estopped from denying the existence of the alleged
easement because Coleman cannot "with one breath, demand that Defendant [O'Leary]
repair and make improvements to the pier, and, with his next breath, deny Defendant's
right to enjoy the pier. Equitable estoppel's chief purpose is to prevent behavior like
Plaintiff's [Coleman's]." Conversely, Coleman contends that O'Leary failed to raise a fact
issue with the trial court as to his easement by estoppel claim and that the Right of Way
agreement was a license that governed use of Lot 1 to access the pier, which could be
revoked at any time. Coleman also argues that an easement by estoppel cannot be
predicated upon passive acquiescence alone and that an easement for pleasure and
recreation alone is not favored at common law.

 A. Applicable Law

 "The doctrine of easement by estoppel has not been clearly defined and its
application depends upon the unique facts of each case." Stallman v. Newman, 9 S.W.3d
243, 246 (Tex. App.-Houston [14th Dist.] 1999, pet. denied); see Wilson v. McGuffin, 749
S.W.2d 606, 610 (Tex. App.-Corpus Christi 1988, writ denied); see also Ross v. Womack,
No. 13-04-571-CV, 2006 Tex. App. LEXIS 10656, at **17-18 (Tex. App.-Corpus Christi
Dec. 14, 2006, no pet.). (4) The Texas Supreme Court first enunciated the rationale for
easement by estoppel in Harrison & Co. v. Boring, 44 Tex. 255 (Tex. 1875):

 The owner of land may create an easement by a parol agreement or
representation which has been so acted on by others as to create an
estoppel in pais. As where he has by parol agreement granted a right of
such easement in his land, upon the faith of which the other party has
expended moneys which will be lost and valueless if the right to enjoy such
easement is revoked, equity has enjoined the owner of the first estate from
preventing the use of it.


Id. at 267. In essence, the alleged servient estate may be estopped to deny the existence
of an easement by making representations that have been acted upon by the owner of the
alleged dominant estate. See Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 209
(Tex.1962).

 In order to create an easement by estoppel, the following elements must exist: (1)
a representation was communicated, either by words or action, to the promisee; (2) the
communication was believed; and (3) the promisee relied on the communication. Storms
v. Tuck, 579 S.W.2d 447, 451 (Tex. 1979). An easement by estoppel is binding on the
successors in title to the servient estate if reliance upon the existing easement continues. 
Holden v. Weidenfeller, 929 S.W.2d 124, 131 (Tex. App.-San Antonio 1996, writ denied). 

 B. Discussion

 The record contains an affidavit from O'Leary, which was attached to his first
amended answer and counterclaim. In his affidavit, O'Leary made the following
contentions:

 2. Mr. Brent Coleman's predecessors in title (Mr. & Mrs. Walsh), gave Mr. &
Mrs. Burkholder, who were my predecessors in title, an easement over Lot
1, Block 138, in favor of Lots 3 and 4, so that my predecessors could locate
the footings of their dock on Lot 1, and have access across the southwestern
corner of Lot 1, to get to the dock and to maintain the dock. After obtaining
that agreement from the owner's of Plaintiff's [Dr. Coleman] property, the
Brukholders [sic] built the dock footings on Plaintiff's land. My family and I
have crossed Plaintiff's property to get to the dock for the last eighteen years
without objection and with the full knowledge, acquiescence and consent of
Mr. Coleman. Crossing Plaintiff's property is the only way to get to my dock.


O'Leary also noted that Coleman had granted him an easement through the Right of Way
agreement, that the purpose of the Right of Way agreement was to satisfy a requirement
of the State of Texas "to secure a written statement from Mr. Coleman acknowledging the
easement rights before the State would continue to give me a lease for the State land that
is submerged under the Laguna Madre under my dock," and that the State of Texas's
General Land Office has recognized the existence of the easement across Lot 1 for use
and maintenance for eighteen years.

 The record also contains an "AFFIDAVIT CERTIFYING EASEMENT" filed in the
public records of Cameron County by O'Leary in August 2004. In this document, O'Leary
characterizes the Right of Way agreement as granting an easement and notes that the
Texas General Land Office has recognized and accepted this easement.

 O'Leary has not provided any written documentation of the original agreement
between the Walshes and the Burkholders establishing the alleged easement. However,
Texas case law supports the notion that for easements, the doctrine of equitable estoppel,
or estoppel in pais as it is sometimes called, operates as an exception to the statute of
frauds which requires a writing for all transactions involving land to prevent injustice and
to protect innocent parties from fraud. See Scott v. Cannon, 959 S.W.2d 712, 720 (Tex.
App.-Austin 1998, pet. denied) (citing Storms v. Tuck, 579 S.W.2d 447, 451 (Tex. 1979);
Drye, 364 S.W.2d at 209)); see also 25 Am. Jur. 2d Easements and Licenses in Real
Property § 14 (2007). 

 We are unable to determine whether the Walshes, predecessors-in-title of Lot 1, the
servient estate, intended to convey a mere license or an easement to the Burkholders,
predecessors in title of Lots 3 and 4, to access their pier. (5) However, the record clearly
demonstrates that some agreement or representation was made (1) to allow for the pier
to be attached to Lot 1 when the Walshes owned Lot 1 and (2) for continuous passage
over Lot 1 to access the pier that lasted for at least eighteen years. In addition, Coleman
made an agreement with O'Leary granting O'Leary right of way across Lot 1 to access the
pier. (6) Agreements, such as these, may be binding upon successors-in-title if the
successors-in-title continue to rely upon the existence of the alleged easement. See
Stallman v. Newman, 9 S.W.3d 243, 246 (Tex. App.-Houston [14th Dist.] 1999, pet.
denied) ("An easement by estoppel, once created, is binding upon successors in title if
reliance upon the existence of the easement continues.") (citing Holden v. Weidenfeller,
929 S.W.2d 124, 131 (Tex. App.-San Antonio 1996, writ denied)). 

 O'Leary has demonstrated that the Burkholders, the predecessors-in-interest of Lots
3 and 4, relied on the agreement by moving the pier from city land to the Walshes' land
and that his family has relied on the agreement by using Lot 1 to access the pier for
eighteen years. In addition, Coleman did not object to O'Leary's usage of the
southwestern-most portion of Lot 1 to access the pier from 1992 to 2004. (7) O'Leary has
paid to maintain and insure the pier and paid the State of Texas leasing fees for locating
the pier in the submerged waters of the Laguna Madre. It is clear that O'Leary presented
sufficient evidence establishing that he believed and relied on the agreement made by the
Walshes and the Burkholders with respect to the pier. 

 Therefore, we conclude, viewing the evidence in the light most favorable to the non-movant and disregarding all contrary evidence and inferences, see Zapata v. Children's
Clinic, 997 S.W.2d 745, 747 (Tex. App.-Corpus Christi 1999, pet. denied), that O'Leary
has raised a genuine issue of material fact as to the nature of the representation, either by
words or actions, communicated to the promisee--the Burkholders. See Tex. R. Civ. P.
166a(c); see also Ross v. Womack, 2006 Tex. App. LEXIS 10656, at *20. Coleman
cannot undermine the agreement made between the Walshes and the Burkholders by
issuing the Right of Way agreement to recharacterize the agreement as a license when the
prior conduct of the parties appears to give rise to an easement by estoppel. We further
conclude that the conduct supported by O'Leary's summary judgment evidence constitutes
more than mere silence or acquiescence on the part of Coleman. (8) Accordingly, we sustain
O'Leary's first issue.

2. Easement by Implication

 In his second issue, O'Leary argues that the record contains some evidence
establishing the elements of an easement by implication--continuous and apparent use,
reasonable necessity, and unity of ownership between the dominant and servient estates. 
See Koonce v. J.E. Brite Estate, 663 S.W.2d 451, 452 (Tex. 1984). Because of this,
O'Leary contends that fact issues exist and that the trial court erred in granting Dr.
Coleman's motion for summary judgment. On the other hand, Dr. Coleman asserts that
there was never common ownership of Lots 1, 3, and 4, thus undermining O'Leary's
easement by implication contention. Further, Coleman argues that O'Leary's summary
judgment evidence does not establish that the prior titleholders of Lot 1 conveyed a
property interest to the prior titleholders of Lots 3 and 4. 

 A. Applicable Law

 The creation of easements may be by an express grant, by implication, by estoppel, 

by prescription, by public dedication, by reservation in a conveyance of land, or by the
purchase of land with reference to a map or plat showing abutting roads or streets. See
Horne v. Ross, 777 S.W.2d 755, 756 (Tex. App.-San Antonio 1989, no writ); see also Ortiz
v. Spann, 671 S.W.2d 909, 911 (Tex. App.-Corpus Christi 1984, writ ref'd n.r.e.). In order
to maintain an implied easement appurtenant, meaning an easement interest which
attaches to the land and passes with it, it was incumbent upon O'Leary as the party
claiming such easement to prove the following elements: (1) unity of ownership between
the dominant and servient estates; (2) apparent use of the easement at the time the
dominant estate was granted; (3) continuous use of the easement, so that the parties must
have intended its use to pass by grant with the dominant estate; (4) reasonable necessity,
rather than a mere convenience, of the easement to the use and enjoyment of the
dominant estate. See Bickler v. Bickler, 403 S.W.2d 354, 357 (Tex. 1966); Vinson v.
Brown, 80 S.W.3d 221, 228-29 (Tex. App.-Austin 2002, no pet.); see also Koonce, 663
S.W.2d at 452; Westbrook v. Wright, 477 S.W.2d 663, 665-66 (Tex. Civ. App.-Houston
[14th Dist.] 1972, no writ). 

 Furthermore, the requirements for the establishment of such an easement by
implication must be strictly adhered to. Exxon Corp. v. Schutzmaier, 537 S.W.2d 282, 285
(Tex. Civ. App.-Beaumont 1976, no writ) (noting that "[t]he use of such an easement is
limited to those uses which are reasonably necessary and convenient and as little
burdensome to the servient estate as possible, for the use of the right granted" and that
easements by estoppel have not been applied with the same strictness and conclusiveness
as easements by implication); Westbrook, 477 S.W.2d at 665-66; Johnson v. Faulk, 470
S.W.2d 144, 148 (Tex. Civ. App.-Tyler 1971, no writ). 

 B. Discussion

 In support of his claim for an easement by implication, O'Leary refers to an affidavit
attached to his first amended answer and counter-claim. In his affidavit, O'Leary notes that
he and his family have used Lot 1 to access the pier for eighteen years, a use which has
been apparent and continuous. Furthermore, O'Leary notes that "[c]rossing Plaintiff's
[Coleman's] property is the only way to get to my dock." O'Leary also attached a map
depicting Lots 1, 3, 4, and the pier to demonstrate that the pier cannot be accessed from
Lots 3 and 4 without crossing over Lot 1. O'Leary, however, failed to present evidence
establishing the first element for an implied easement--unity of ownership between the
dominant and servient estates. See Koonce, 663 S.W.2d at 452 ("To establish unity of
ownership[,] the claimant must prove prior to severance, his grantor owned the dominant
and servient estate as a unit or single tract."). Previously, we noted that the dominant
estate consists of Lots 3, 4, and the pier. O'Leary did not present the trial court with
evidence demonstrating common ownership of Lots 1, 3, 4, and the pier. Moreover,
O'Leary did not present evidence demonstrating common ownership of either Lot 1 and
the pier or Lots 3 and 4 and Lot 1. Because O'Leary failed to produce evidence creating
a fact issue as to the first element for an implied easement, we need not address the
remaining elements, and we conclude that the trial court did not err in granting Coleman's
motion for summary judgment as to O'Leary's easement by implication contention. See
Tex. R. Civ. P. 166a(i); see also Koonce, 663 S.W.at 452. Accordingly, we overrule
O'Leary's second issue.

3. Coleman's Deed to Lot 1

 In his third issue, O'Leary notes that Lot 1 was conveyed to Coleman by a warranty
deed stating that the conveyance was subject to all "[v]isible and apparent easements on
or across the property herein described." O'Leary argues that this language, the fact that
Coleman knew that the pier belonged to O'Leary, and the fact that the pier could only be
reached by crossing Lot 1, supports a finding that O'Leary had an easement over Lot 1 as
a matter of law. Coleman counters by arguing that O'Leary's third issue was not properly
preserved and, alternatively, that O'Leary does not have standing to claim benefits under
the deed to Lot 1 since O'Leary was not a party to the deed or its warranties. 

 A. Applicable Law 

 The primary duty of a court when construing a deed is to ascertain the intent of the
parties from the four corners of the document. Luckel, 819 S.W.2d at 461-62. "The parties
to an instrument intend every clause to have some effect and in some measure to
evidence their agreement." Id. at 462 (quoting Altman, 712 S.W.2d at 118). As a result,
when seeking to ascertain the intent of the parties, a court attempts to harmonize all parts
of the deed. Id. (citing Altman, 712 S.W.2d at 118). Even if different parts of the deed
appear contradictory or inconsistent, a court must strive to harmonize all of its parts and
to construe the instrument so as to give effect to all of its provisions. Id. (citing Benge v.
Scharbauer, 259 S.W.2d 166, 167 (Tex. 1953)).

 An easement is considered an interest in land; therefore, the creation and transfer
of such an interest is subject to the statute of frauds, unless the easement is imposed by
operation of law, i.e. easements created by means other than a writing. See Drye, 364
S.W.2d at 203 & n.5 (noting that "a license, under some conditions, may rise to the dignity
of an easement and must be in writing"); see also Schilab v. Dierlam, No. 13-03-00185-CV,
2004 Tex. App. LEXIS 7260, at *6 (Tex. App.-Corpus Christi Aug. 12, 2004, no pet.)
(mem. op.). In other words, O'Leary must demonstrate that the alleged easement was
expressly conveyed in compliance with the statute of frauds to establish an easement as
a matter of law. See Drye, 364 S.W.2d at 203; see also Ross, 2006 Tex. App. LEXIS
10656, at **16-17; Schilab, 2004 Tex. App. LEXIS 7260, at *6.

 B. Discussion

 As a preliminary matter, we note that O'Leary did raise this issue with the trial court
in his response to Coleman's motion for partial summary judgment; therefore, this issue
has been preserved for appeal. (9) See Tex. R. Civ. P. 166a(c) ("Issues not expressly
presented to the trial court by written motion, answer or other response shall not be
considered on appeal as grounds for reversal."). However, O'Leary does not have
standing to claim a benefit derived from the warranty deed between the Walshes and
Coleman. See S. Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 306 (Tex. 2007); see also
Haug v. Carter, No. 03-03-00476-CV, 2004 Tex. App. LEXIS 6817, at *21 (Tex.
App.-Austin July 29, 2004, pet. denied) (noting that "[a] person who is not a party to a
contract will still have a cause of action to enforce the contract if it was made for his or her
benefit," but "[t]he person claiming to be a third-party beneficiary must establish the
existence of a contract and standing as a third-party beneficiary"). 

 Standing is a component of subject-matter jurisdiction, and we thus consider the
appellees' standing under the same standard by which we review subject-matter
jurisdiction generally. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446
(Tex. 1993). Subject-matter jurisdiction presents a question of law; we review the district
court's decision de novo. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.
1998). The general test for standing for individuals requires that there "(a) shall be a real
controversy between the parties, which (b) will be actually determined by the judicial
declaration sought." Bd. of Water Eng'rs v. City of San Antonio, 155 Tex. 111, 283 S.W.2d
722, 724 (1955).

 In the instant case, O'Leary would not be properly characterized as a third-party
beneficiary because he was not a party to the deed conveying Lot 1 from the Walshes to
Coleman even though he attempts to derive a benefit from the deed on appeal. See
Canfield v. Countrywide Home Loans, Inc., 187 S.W.3d 258, 263-64 (Tex. App.-Beaumont
2006, no pet.) (applying third party beneficiary analysis within the context of a deed of trust 
and warranty deed conveying property); Haug, 2004 Tex. App. LEXIS, at **20-24 (applying
third party beneficiary analysis to a conveyance of easements located on Lake Travis). 
The Texas Supreme Court has held that there is a presumption against conferring third-party beneficiary status on non-contracting parties. See S. Tex. Water Auth., 223 S.W.3d
at 306 (citing MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex.
1999)). In determining whether a third party may enforce or challenge a contract between
others, it is the contracting parties' intent that controls. See Corpus Christi Bank & Trust
v. Smith, 525 S.W.2d 501, 503-04 (Tex. 1975). 

 The supreme court further noted that the intent to confer a direct benefit upon a third
party "must be clearly and fully spelled out or enforcement by the third party must be
denied." MCI Telecomms. Corp., 995 S.W.2d at 651. Incidental benefits that may flow
from a contract to a third party do not confer the right to enforce the contract. Id. at 652. 
"A third party may only enforce a contract when the contracting parties themselves
intended to secure some benefit for the third party and entered into the contract directly for
the third party's benefit." S. Tex. Water Auth., 223 S.W.3d at 306 (citing MCI Telecomms.
Corp., 995 S.W.2d at 651; Stine v. Stewart, 80 S.W.3d 586, 589 (Tex. 2002)). In
establishing that the contracting parties intended to confer a benefit to the third party, the
third party must benefit more than incidentally. Id. In other words, the third party must be
either a donee or creditor beneficiary. MCI Telecomms. Corp., 995 S.W.2d at 651. A
person is a donee beneficiary if the performance promised will come to him as a pure
donation. Id. If performance will come to satisfy a duty or legally enforceable commitment
owed by the promisee, then the third party is considered a creditor beneficiary. Id.

 The record reflects that a contract--the deed--existed, but O'Leary has not
presented any evidence indicating that the parties to the deed--the Walshes and
Coleman--intended to confer a benefit to him. The record indicates that the Walshes and
Coleman entered into the deed for the purpose of conveying Lot 1 to Coleman, not for the
purpose of conveying an easement to O'Leary. The benefit O'Leary derives from the deed
is incidental, at best. Moreover, it is noteworthy that the deed makes reference to an
easement for public utilities, an easement "in favor of Cameron County Fresh Water
Supply District Number One (1)," and an easement and right of way executed by L.C.
Guentel to Central Power and Light Company. However, the deed does not explicitly
reference O'Leary's alleged easement. Therefore, because O'Leary has not proven that
the parties intended to confer more than an incidental benefit to him and because O'Leary
would not be considered a third party beneficiary, we conclude that O'Leary does not have
standing to claim benefits under Coleman's deed. Accordingly, we overrule O'Leary's third
issue.

IV. Conclusion Because O'Leary has raised a material fact issue as to his first issue pertaining to
an easement by estoppel, we reverse and remand for proceedings consistent with this
opinion.

 _______________________

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 8th day of May, 2008. 

 
1. O'Leary contends that the submerged land supporting the pier is subject to a lease he has with the
State of Texas which requires him to pay a yearly lease fee.
2. Because of the irreparable nature of the harm Coleman claimed to have sustained, he requested 
injunctive relief, an ex parte temporary restraining order, and a temporary injunction to prevent O'Leary from
crossing over his property to access the pier in his petition. The record contains an agreed temporary
restraining order signed by the trial court on May 3, 2005.
3. O'Leary notes that he first acquired an interest in Lots 3 and 4 on September 28, 1987, through
Dwight Parks, who acquired the property as trustee for O'Leary. O'Leary contended that at this time, the
grantors of the property, Jack and Martha Burkholder, advised him that the "owners of Lots 3 and 4, Block
138, enjoyed an easement across Lot 1 . . . to gain access to a dock which extended into the Laguna Madre
and had its footings on the southwest corner of Lot 1 of Block 138." O'Leary also noted that the City of South
Padre Island forced the Burkholders to locate the dock's footings off of city property to Lot 1 and that 
Coleman's predecessors-in-interest assured the Burkholders that they and subsequent owners of Lots 3 and
4 would have the right to use Lot 1 to gain access to the pier. O'Leary asserted that he would not have bought
Lots 3 and 4 without that promise. 
4. In reviewing secondary authority pertaining to easements by estoppel, we have found the following:


 An easement by estoppel may also exist in a passageway over a boundary strip as a result
of longstanding reciprocal use of the strip by the adjoining owners as a passageway. 


 One who attempts to create an easement by estoppel must show that a
representation was communicated to the promisee, the representation was believed, and
there was reliance upon such a communication. For example, an easement may be created
by estoppel where a vendor represents to a purchaser that an easement exists, in favor of
the premises proposed to be sold, over the vendor's other realty, and the purchase relies on
that representation, but the conveyance subsequently made does not mention such an
easement. Similarly, an easement by estoppel is created when a landlord voluntarily
imposes an apparent servitude on his or her property, and another person, acting reasonably,
believes that the servitude is permanent and in reliance upon that belief does something that
he or she would not have done otherwise or refrains from doing something that he or she
would have done otherwise.

 

 The reliance that must be shown to warrant a finding that an easement has been
created by estoppel requires a showing of a detriment to the person relying on the easement,
which may be determined from the surrounding circumstances, including the effect on the
easement user if the easement is revoked or removed. Reliance may be shown by an
expenditure other than upon the servient estate.


25 Am. Jur. 2d Easements and Licenses in Real Property § 14 (2007) (citations omitted).
5. O'Leary characterizes the pier as the dominant estate rather than Lots 3 and 4 in order to preserve
his argument that an easement by implication exists. A dominant estate is an estate that benefits from an
easement. Black's Law Dictionary 449 (7th ed. 2000); see 25 Am. Jur. 2d Easements and Licenses in Real
Property § 1 (2007) ("[A] 'dominant estate,' that has right to use land of another . . . ."). Therefore, the pier
and Lots 3 and 4 would most aptly be considered the dominant estates because O'Leary's family has traveled
over Lot 1 to get to and from the pier and Lots 3 and 4. Clearly, Lots 3 and 4 benefit from the alleged
easement over Lot 1 through usage of the pier and the intrinsic value of the pier is tied to the ability of the
O'Learys, the owners of Lots 3 and 4, to use the pier. Without access to the pier, O'Leary's pier would be
rendered worthless unless the pier was somehow moved to another piece of bay-front property. As previously
mentioned, Lots 3 and 4 are not bay-front property. Moreover, the record does not reflect that O'Leary owns
any bay-front property.
6. Coleman attempts to characterize the Right of Way agreement as a license that is revocable at any
time. However, we need not determine the true character of the Right of Way agreement. We need only
determine whether some representation was made that an easement existed and that O'Leary believed the
representation and relied upon on it. See Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 209 (Tex.1962)
(establishing the essential elements for an easement by estoppel); see also Storms v. Tuck, 579 S.W.2d 447,
451 (Tex. 1979) (same). Essentially, we are examining the conduct of the parties prior to the execution of the
Right of Way agreement. 

 
7. We do note that Texas case law is clear that an easement by estoppel may not be predicated upon
passive acquiescence alone. See Stallman v. Newman, 9 S.W.3d 243, 248 (Tex. App.-Houston [14th Dist.]
1999, pet. denied); see also Scott v. Cannon, 959 S.W.2d 712, 721 (Tex. App.-Austin 1998, pet. denied) 
(passive acquiescence "for no matter how long a period" will not estop landowner from denying existence of
easement across his land). 
8. In support of his contention that an easement by estoppel cannot be predicated upon passive
acquiescence alone, Coleman relies heavily on this Court's holding in Schilab v. Dierlam, No. 13-03-00185-CV, 2004 Tex. App. LEXIS 7260, at **9-10 (Tex. App.-Corpus Christi Aug. 12, 2004, no pet.) (mem. op.). 
However, this case is factually distinguishable from the instant case. In Schilab, we concluded that the trial
court did not err in granting Dierlam's motion for summary judgment as to the claim made by
appellants--Gerald Schilab, C.B. Wright, Mary Wright, Carl Williams, and Carroll Edge--that an easement
by estoppel existed because appellants failed to present any evidence that an express representation was
communicated to them that an easement existed. Id. at *11. The appellants contended that an easement
by estoppel was created by "silence and acquiescence" on the part of Dierlam and her predecessors-in-title
in the face of the appellants' and their predecessors' use of the road at issue. Id. at *9. In the instant case,
O'Leary has presented evidence demonstrating that an agreement between the Walshs and the Burkholders
governed the placement of and access to the pier. O'Leary contends that the Right of Way agreement
constitutes a recognition by Coleman of O'Leary's easement over the southwestern-most corner of Lot 1 to
access the pier. O'Leary also presents affidavit testimony demonstrating that he maintained and insured the
pier and paid leasing fees to the State of Texas for the pier in reliance on the agreement made between the
Walshs and the Burkholders and the written permission granted by Coleman. Clearly, O'Leary is not relying
solely on passive acquiescence to establish an easement by estoppel; therefore, Schilab is not persuasive
in this dispute. 
9. In his response to Coleman's motion for partial summary judgment, O'Leary noted that:


 When Coleman purchased his property, the very first item excepted from the deed was the
following:

 

 1. Visible and apparent easements on or across the property herein described;

 

 . . . .

 

 Since Mr. Coleman knew that the Deed that gave him his rights in Lot 1 was
specifically made subject to visible and apparent easements on or across the property, Mr.
Coleman always understood that the O'Leary's were entitled to cross the very southwestern-most corner of his property as necessary to access that dock. He never objected from 1992
through 2004.