

**NUMBER 13-07-272-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TIMOTHY R. O'LEARY,                                                    Appellant,

v.

BRENT J. COLEMAN, M.D.,                                             Appellee.

**On appeal from the 197th District Court of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Garza**

This suit involves a dispute over the existence of an easement burdening property in the town of South Padre Island. In an attempt to sell a parcel of bay-front property and to extinguish any encumbrances on the property, appellee, Brent Coleman, M.D., filed a declaratory judgment and trespass to try title action against appellant, Timothy O'Leary, seeking to declare O'Leary's alleged easement invalid. In response, O'Leary filed a general denial and a counterclaim requesting a judicial declaration that he had a valid

easement over Coleman's property. By three issues, O'Leary contends that the trial court erred in granting Coleman's traditional motion for partial summary judgment because: (1) he raised material fact issues as to his claim for an easement by estoppel; (2) he raised material fact issues with regard to his claim for an easement by implication; and (3) he established an easement as a matter of law within the context of the deed to Coleman's property. We reverse and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute pertains to three lots and a forty-foot pier located on or near Laguna Madre in South Padre Island, Texas. Coleman is the owner of Lot 1, a bay-front lot on the Laguna Madre. Coleman acquired Lot 1 by warranty deed from Warren Lee Walsh and Carolyn L. Walsh on or about June 1, 1992. On or about January 10, 1997, O'Leary acquired title to Lots 3 and 4—located inland from Lot 1 along Mars Street—by warranty deed from Richard J. O'Leary.

Attached to the southwestern-most corner of Lot 1 is O'Leary's pier, which extends forty feet into the Laguna Madre and is supported by pillars sunk into the sea floor. O'Leary has owned, used, and maintained this pier for at least eighteen years.[1] In order to access the pier, O'Leary must walk from Mars Street across the "southwestern-most corner of Lot 1 for about six to ten feet."

On September 29, 1995, Coleman granted O'Leary permission in writing to cross over his property to access the pier. Specifically, Coleman's written permission ("Right of Way agreement") provided, in relevant part:

> Mr. Timothy O'Leary has been given Right of Way to the dock extending
> from the edge of my property to the Laguna Madre. The use, maintenance

[1] O'Leary contends that the submerged land supporting the pier is subject to a lease he has with the State of Texas which requires him to pay a yearly lease fee.

and liability of this structure is solely his responsibility. . . .

The document reflects that it was recorded in the Cameron County public records on August 17, 2004, and that it was received by the Texas General Land Office on May 10, 1996.

This conflict arose on October 29, 2004, when Coleman provided O'Leary with a letter terminating permission to use Lot 1 to access the pier. At this time, Coleman notified O'Leary of his intention to sell the property and his desire to remove any potential encumbrances on the property.

On April 1, 2005, Coleman filed a petition for declaratory judgment and an application for a temporary restraining order and injunction. In his petition, Coleman (1) sought an interpretation of the Right of Way agreement by the trial court; (2) asserted that O'Leary had become a trespasser by continually using his property to access the pier; (3) contended that he lost two sales of the property because O'Leary slandered his title to Lot 1, resulting in at least $100,000 in damages; and (4) argued that he had suffered irreparable harm because O'Leary refused to recognize the revocation of the Right of Way agreement and continued to trespass on his property.[2] Coleman also argued that the Right of Way agreement constituted a licensing agreement, not an easement, thereby temporarily allowing O'Leary to cross over his property to access the pier. Because he merely granted O'Leary a license to cross over his property, Coleman asserted that he could revoke the license at any time.

On June 3, 2005, Coleman filed a motion for partial summary judgment as to his

---

[2] Because of the irreparable nature of the harm Coleman claimed to have sustained, he requested injunctive relief, an ex parte temporary restraining order, and a temporary injunction to prevent O'Leary from crossing over his property to access the pier in his petition. The record contains an agreed temporary restraining order signed by the trial court on May 3, 2005.

3

declaratory judgment action advancing the same licensing argument made in his petition for declaratory judgment. Further, Coleman noted that as a result of O'Leary's continuing trespass, he suffered irreparable harm that could not be readily calculated but required judicial intervention to mitigate damages.

Subsequently, on July 26, 2005, O'Leary filed his first amended answer and counterclaim, denying all of the allegations contained in Coleman's petition and asserting that he had acquired an easement by estoppel or by implication to cross over Coleman's property to access the pier. O'Leary contended that from 1987 to 2005, he and his family continuously traveled across the southwestern-most corner of Lot 1 for purposes of ingress to and egress from the pier.[3] O'Leary also argued that he and his predecessors-in-interest spent money on the State's leasing fees, maintenance costs, taxes, insurance premiums, and improvements for the pier in reliance on promises and assurances made by both the Walshes and Coleman that they could use the southwestern-most corner of Lot 1 to access the pier.

On July 29, 2005, Coleman filed an amended motion for partial summary judgment asserting the same contentions made in his original motion for partial summary judgment and adding grounds addressing O'Leary's counterclaim that he had an easement by estoppel. Specifically, Coleman stated that the trial court could look to the Right of Way agreement to determine the rights of the parties and that the Right of Way agreement

---

[3] O'Leary notes that he first acquired an interest in Lots 3 and 4 on September 28, 1987, through Dwight Parks, who acquired the property as trustee for O'Leary. O'Leary contended that at this time, the grantors of the property, Jack and Martha Burkholder, advised him that the "owners of Lots 3 and 4, Block 138, enjoyed an easement across Lot 1 . . . to gain access to a dock which extended into the Laguna Madre and had its footings on the southwest corner of Lot 1 of Block 138." O'Leary also noted that the City of South Padre Island forced the Burkholders to locate the dock's footings off of city property to Lot 1 and that Coleman's predecessors-in-interest assured the Burkholders that they and subsequent owners of Lots 3 and 4 would have the right to use Lot 1 to gain access to the pier. O'Leary asserted that he would not have bought Lots 3 and 4 without that promise.

4

contemplated that O'Leary would be responsible for the maintenance and the liability of the dock; therefore, O'Leary "cannot now complain about his reliance on a promise when he assumed responsibility to maintain and insure the dock." Additionally, Coleman contended that (1) O'Leary did not provide sufficient evidence to establish that he was the owner of the dock, and (2) O'Leary did not "allege or prove that the dock itself was constructed by the owner of Lots 3 and 4 in reliance on some promise from the owners of Lots 1 and 2 to grant some kind of access or easement."

On August 3, 2005, the trial court conducted a hearing on Coleman's amended motion for partial summary judgment, Coleman's petition for declaratory and injunctive relief, and O'Leary's amended answer and counterclaim. On January 11, 2006, the trial court granted Coleman's motion for partial summary judgment and made the following findings: (1) the Right of Way agreement was terminated by Coleman's letter dated October 29, 2004; therefore, O'Leary was no longer licensed to use Lot 1 to access the pier; (2) O'Leary was guilty of trespass; (3) O'Leary slandered Coleman's title; therefore, Coleman was entitled to damages to be determined by the finder of fact; and (4) Coleman was entitled to reasonable and necessary attorney's fees in the amount of at least $7,000.

On January 29, 2007, Coleman filed a motion to sever his declaratory judgment action from the underlying slander of title and damages case. The trial court granted Coleman's motion to sever on February 9, 2007, and assigned the declaratory judgment action a new cause number. This appeal ensued.

## II. STANDARD OF REVIEW

The function of summary judgment is to eliminate patently unmeritorious claims and

5

defenses, not to deprive litigants of the right to a trial by jury. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (citing *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989)); *Alaniz v. Hoyt*, 105 S.W.3d 330, 344 (Tex. App.–Corpus Christi 2003, no pet.). We review de novo a trial court's grant or denial of a traditional motion for summary judgment. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); *Alaniz*, 105 S.W.3d at 345.

Under a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Alaniz*, 105 S.W.3d at 345; *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002, pet. denied). After the movant produces evidence sufficient to show it is entitled to summary judgment, the non-movant must then present evidence raising a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). We "must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *see City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

### III. ANALYSIS

### 1. Easement by Estoppel

In his first issue, O'Leary contends that the trial court erred in granting Coleman's motion for summary judgment because he had established an easement by estoppel burdening Lot 1. Specifically, O'Leary argues that his affidavit chronicling the existence of

the alleged easement was sufficient to raise a fact issue. O'Leary further argues that the Right of Way agreement was not a license and was executed for the sole purpose of satisfying the State of Texas's requirement that O'Leary have a property interest in bay-front property before it leased the submerged land upon which the pier sits. Finally, O'Leary asserts that Coleman is estopped from denying the existence of the alleged easement because Coleman cannot "with one breath, demand that Defendant [O'Leary] repair and make improvements to the pier, and, with his next breath, deny Defendant's right to enjoy the pier. Equitable estoppel's chief purpose is to prevent behavior like Plaintiff's [Coleman's]." Conversely, Coleman contends that O'Leary failed to raise a fact issue with the trial court as to his easement by estoppel claim and that the Right of Way agreement was a license that governed use of Lot 1 to access the pier, which could be revoked at any time. Coleman also argues that an easement by estoppel cannot be predicated upon passive acquiescence alone and that an easement for pleasure and recreation alone is not favored at common law.

### A. Applicable Law

"The doctrine of easement by estoppel has not been clearly defined and its application depends upon the unique facts of each case." *Stallman v. Newman*, 9 S.W.3d 243, 246 (Tex. App.–Houston [14th Dist.] 1999, pet. denied); *see Wilson v. McGuffin*, 749 S.W.2d 606, 610 (Tex. App.–Corpus Christi 1988, writ denied); *see also Ross v. Womack*, No. 13-04-571-CV, 2006 Tex. App. LEXIS 10656, at **17-18 (Tex. App.–Corpus Christi Dec. 14, 2006, no pet.).[4] The Texas Supreme Court first enunciated the rationale for

---

[4] In reviewing secondary authority pertaining to easements by estoppel, we have found the following:

An easement by estoppel may also exist in a passageway over a boundary strip as a result of longstanding reciprocal use of the strip by the adjoining owners as a passageway.

easement by estoppel in *Harrison & Co. v. Boring*, 44 Tex. 255 (Tex. 1875):

> The owner of land may create an easement by a parol agreement or representation which has been so acted on by others as to create an estoppel in pais. As where he has by parol agreement granted a right of such easement in his land, upon the faith of which the other party has expended moneys which will be lost and valueless if the right to enjoy such easement is revoked, equity has enjoined the owner of the first estate from preventing the use of it.

*Id.* at 267. In essence, the alleged servient estate may be estopped to deny the existence of an easement by making representations that have been acted upon by the owner of the alleged dominant estate. *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex.1962).

In order to create an easement by estoppel, the following elements must exist: (1) a representation was communicated, either by words or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication. *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979). An easement by estoppel is binding on the successors in title to the servient estate if reliance upon the existing easement continues.

---

One who attempts to create an easement by estoppel must show that a representation was communicated to the promisee, the representation was believed, and there was reliance upon such a communication. For example, an easement may be created by estoppel where a vendor represents to a purchaser that an easement exists, in favor of the premises proposed to be sold, over the vendor's other realty, and the purchase relies on that representation, but the conveyance subsequently made does not mention such an easement. Similarly, an easement by estoppel is created when a landlord voluntarily imposes an apparent servitude on his or her property, and another person, acting reasonably, believes that the servitude is permanent and in reliance upon that belief does something that he or she would not have done otherwise or refrains from doing something that he or she would have done otherwise.

The reliance that must be shown to warrant a finding that an easement has been created by estoppel requires a showing of a detriment to the person relying on the easement, which may be determined from the surrounding circumstances, including the effect on the easement user if the easement is revoked or removed. Reliance may be shown by an expenditure other than upon the servient estate.

25 AM. JUR. 2D *Easements and Licenses in Real Property* § 14 (2007) (citations omitted).

*Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.–San Antonio 1996, writ denied).

**B. Discussion**

The record contains an affidavit from O'Leary, which was attached to his first amended answer and counterclaim. In his affidavit, O'Leary made the following contentions:

> 2. Mr. Brent Coleman's predecessors in title (Mr. & Mrs. Walsh), gave Mr. & Mrs. Burkholder, who were my predecessors in title, an easement over Lot 1, Block 138, in favor of Lots 3 and 4, so that my predecessors could locate the footings of their dock on Lot 1, and have access across the southwestern corner of Lot 1, to get to the dock and to maintain the dock. After obtaining that agreement from the owner's of Plaintiff's [Dr. Coleman] property, the Brukholders [sic] built the dock footings on Plaintiff's land. My family and I have crossed Plaintiff's property to get to the dock for the last eighteen years without objection and with the full knowledge, acquiescence and consent of Mr. Coleman. Crossing Plaintiff's property is the only way to get to my dock.

O'Leary also noted that Coleman had granted him an easement through the Right of Way agreement, that the purpose of the Right of Way agreement was to satisfy a requirement of the State of Texas "to secure a written statement from Mr. Coleman acknowledging the easement rights before the State would continue to give me a lease for the State land that is submerged under the Laguna Madre under my dock," and that the State of Texas's General Land Office has recognized the existence of the easement across Lot 1 for use and maintenance for eighteen years.

The record also contains an "AFFIDAVIT CERTIFYING EASEMENT" filed in the public records of Cameron County by O'Leary in August 2004. In this document, O'Leary characterizes the Right of Way agreement as granting an easement and notes that the Texas General Land Office has recognized and accepted this easement.

O'Leary has not provided any written documentation of the original agreement

9

between the Walshes and the Burkholders establishing the alleged easement. However, Texas case law supports the notion that for easements, the doctrine of equitable estoppel, or estoppel in pais as it is sometimes called, operates as an exception to the statute of frauds which requires a writing for all transactions involving land to prevent injustice and to protect innocent parties from fraud. *See Scott v. Cannon*, 959 S.W.2d 712, 720 (Tex. App.–Austin 1998, pet. denied) (citing *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979); *Drye*, 364 S.W.2d at 209)); *see also* 25 AM. JUR. 2D *Easements and Licenses in Real Property* § 14 (2007).

We are unable to determine whether the Walshes, predecessors-in-title of Lot 1, the servient estate, intended to convey a mere license or an easement to the Burkholders, predecessors in title of Lots 3 and 4, to access their pier.[5] However, the record clearly demonstrates that some agreement or representation was made (1) to allow for the pier to be attached to Lot 1 when the Walshes owned Lot 1 and (2) for continuous passage over Lot 1 to access the pier that lasted for at least eighteen years. In addition, Coleman made an agreement with O'Leary granting O'Leary right of way across Lot 1 to access the pier.[6] Agreements, such as these, may be binding upon successors-in-title if the

---

[5] O'Leary characterizes the pier as the dominant estate rather than Lots 3 and 4 in order to preserve his argument that an easement by implication exists. A dominant estate is an estate that benefits from an easement. BLACK'S LAW DICTIONARY 449 (7th ed. 2000); *see* 25 AM. JUR. 2d *Easements and Licenses in Real Property* § 1 (2007) ("[A] 'dominant estate,' that has right to use land of another . . . ."). Therefore, the pier and Lots 3 and 4 would most aptly be considered the dominant estates because O'Leary's family has traveled over Lot 1 to get to and from the pier and Lots 3 and 4. Clearly, Lots 3 and 4 benefit from the alleged easement over Lot 1 through usage of the pier and the intrinsic value of the pier is tied to the ability of the O'Learys, the owners of Lots 3 and 4, to use the pier. Without access to the pier, O'Leary's pier would be rendered worthless unless the pier was somehow moved to another piece of bay-front property. As previously mentioned, Lots 3 and 4 are not bay-front property. Moreover, the record does not reflect that O'Leary owns any bay-front property.

[6] Coleman attempts to characterize the Right of Way agreement as a license that is revocable at any time. However, we need not determine the true character of the Right of Way agreement. We need only determine whether some representation was made that an easement existed and that O'Leary believed the representation and relied upon on it. *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex.1962)

10

successors-in-title continue to rely upon the existence of the alleged easement. *See Stallman v. Newman*, 9 S.W.3d 243, 246 (Tex. App.–Houston [14th Dist.] 1999, pet. denied) ("An easement by estoppel, once created, is binding upon successors in title if reliance upon the existence of the easement continues.") (citing *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.–San Antonio 1996, writ denied)).

O'Leary has demonstrated that the Burkholders, the predecessors-in-interest of Lots 3 and 4, relied on the agreement by moving the pier from city land to the Walshes' land and that his family has relied on the agreement by using Lot 1 to access the pier for eighteen years. In addition, Coleman did not object to O'Leary's usage of the southwestern-most portion of Lot 1 to access the pier from 1992 to 2004.[7] O'Leary has paid to maintain and insure the pier and paid the State of Texas leasing fees for locating the pier in the submerged waters of the Laguna Madre. It is clear that O'Leary presented sufficient evidence establishing that he believed and relied on the agreement made by the Walshes and the Burkholders with respect to the pier.

Therefore, we conclude, viewing the evidence in the light most favorable to the non-movant and disregarding all contrary evidence and inferences, *see Zapata v. Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App.–Corpus Christi 1999, pet. denied), that O'Leary has raised a genuine issue of material fact as to the nature of the representation, either by

---

(establishing the essential elements for an easement by estoppel); *see also Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979) (same). Essentially, we are examining the conduct of the parties prior to the execution of the Right of Way agreement.

[7] We do note that Texas case law is clear that an easement by estoppel may not be predicated upon passive acquiescence alone. *See Stallman v. Newman*, 9 S.W.3d 243, 248 (Tex. App.–Houston [14th Dist.] 1999, pet. denied); *see also Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App.–Austin 1998, pet. denied) (passive acquiescence "for no matter how long a period" will not estop landowner from denying existence of easement across his land).

words or actions, communicated to the promisee—the Burkholders. *See* TEX. R. CIV. P. 166a(c); *see also Ross v. Womack*, 2006 Tex. App. LEXIS 10656, at *20. Coleman cannot undermine the agreement made between the Walshes and the Burkholders by issuing the Right of Way agreement to recharacterize the agreement as a license when the prior conduct of the parties appears to give rise to an easement by estoppel. We further conclude that the conduct supported by O'Leary's summary judgment evidence constitutes more than mere silence or acquiescence on the part of Coleman.[8] Accordingly, we sustain O'Leary's first issue.

## 2. Easement by Implication

In his second issue, O'Leary argues that the record contains some evidence establishing the elements of an easement by implication—continuous and apparent use, reasonable necessity, and unity of ownership between the dominant and servient estates. *See Koonce v. J.E. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984). Because of this, O'Leary contends that fact issues exist and that the trial court erred in granting Dr. Coleman's motion for summary judgment. On the other hand, Dr. Coleman asserts that

---

[8] In support of his contention that an easement by estoppel cannot be predicated upon passive acquiescence alone, Coleman relies heavily on this Court's holding in *Schilab v. Dierlam*, No. 13-03-00185-CV, 2004 Tex. App. LEXIS 7260, at **9-10 (Tex. App.–Corpus Christi Aug. 12, 2004, no pet.) (mem. op.). However, this case is factually distinguishable from the instant case. In *Schilab*, we concluded that the trial court did not err in granting Dierlam's motion for summary judgment as to the claim made by appellants—Gerald Schilab, C.B. Wright, Mary Wright, Carl Williams, and Carroll Edge—that an easement by estoppel existed because appellants failed to present any evidence that an express representation was communicated to them that an easement existed. *Id.* at *11. The appellants contended that an easement by estoppel was created by "silence and acquiescence" on the part of Dierlam and her predecessors-in-title in the face of the appellants' and their predecessors' use of the road at issue. *Id.* at *9. In the instant case, O'Leary has presented evidence demonstrating that an agreement between the Walshs and the Burkholders governed the placement of and access to the pier. O'Leary contends that the Right of Way agreement constitutes a recognition by Coleman of O'Leary's easement over the southwestern-most corner of Lot 1 to access the pier. O'Leary also presents affidavit testimony demonstrating that he maintained and insured the pier and paid leasing fees to the State of Texas for the pier in reliance on the agreement made between the Walshs and the Burkholders and the written permission granted by Coleman. Clearly, O'Leary is not relying solely on passive acquiescence to establish an easement by estoppel; therefore, *Schilab* is not persuasive in this dispute.

12

there was never common ownership of Lots 1, 3, and 4, thus undermining O'Leary's easement by implication contention. Further, Coleman argues that O'Leary's summary judgment evidence does not establish that the prior titleholders of Lot 1 conveyed a property interest to the prior titleholders of Lots 3 and 4.

**A. Applicable Law**

The creation of easements may be by an express grant, by implication, by estoppel, by prescription, by public dedication, by reservation in a conveyance of land, or by the purchase of land with reference to a map or plat showing abutting roads or streets. *See Horne v. Ross*, 777 S.W.2d 755, 756 (Tex. App.–San Antonio 1989, no writ); *see also Ortiz v. Spann*, 671 S.W.2d 909, 911 (Tex. App.–Corpus Christi 1984, writ ref'd n.r.e.). In order to maintain an implied easement appurtenant, meaning an easement interest which attaches to the land and passes with it, it was incumbent upon O'Leary as the party claiming such easement to prove the following elements: (1) unity of ownership between the dominant and servient estates; (2) apparent use of the easement at the time the dominant estate was granted; (3) continuous use of the easement, so that the parties must have intended its use to pass by grant with the dominant estate; (4) reasonable necessity, rather than a mere convenience, of the easement to the use and enjoyment of the dominant estate. *See Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex. 1966); *Vinson v. Brown*, 80 S.W.3d 221, 228-29 (Tex. App.–Austin 2002, no pet.); *see also Koonce*, 663 S.W.2d at 452; *Westbrook v. Wright*, 477 S.W.2d 663, 665-66 (Tex. Civ. App.–Houston [14th Dist.] 1972, no writ).

Furthermore, the requirements for the establishment of such an easement by

implication must be strictly adhered to. *Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 285 (Tex. Civ. App.–Beaumont 1976, no writ) (noting that "[t]he use of such an easement is limited to those uses which are reasonably necessary and convenient and as little burdensome to the servient estate as possible, for the use of the right granted" and that easements by estoppel have not been applied with the same strictness and conclusiveness as easements by implication); *Westbrook*, 477 S.W.2d at 665-66; *Johnson v. Faulk*, 470 S.W.2d 144, 148 (Tex. Civ. App.–Tyler 1971, no writ).

## B. Discussion

In support of his claim for an easement by implication, O'Leary refers to an affidavit attached to his first amended answer and counter-claim. In his affidavit, O'Leary notes that he and his family have used Lot 1 to access the pier for eighteen years, a use which has been apparent and continuous. Furthermore, O'Leary notes that "[c]rossing Plaintiff's [Coleman's] property is the only way to get to my dock." O'Leary also attached a map depicting Lots 1, 3, 4, and the pier to demonstrate that the pier cannot be accessed from Lots 3 and 4 without crossing over Lot 1. O'Leary, however, failed to present evidence establishing the first element for an implied easement—unity of ownership between the dominant and servient estates. *See Koonce*, 663 S.W.2d at 452 ("To establish unity of ownership[,] the claimant must prove prior to severance, his grantor owned the dominant and servient estate as a unit or single tract."). Previously, we noted that the dominant estate consists of Lots 3, 4, and the pier. O'Leary did not present the trial court with evidence demonstrating common ownership of Lots 1, 3, 4, and the pier. Moreover, O'Leary did not present evidence demonstrating common ownership of either Lot 1 and the pier or Lots 3 and 4 and Lot 1. Because O'Leary failed to produce evidence creating

14

a fact issue as to the first element for an implied easement, we need not address the remaining elements, and we conclude that the trial court did not err in granting Coleman's motion for summary judgment as to O'Leary's easement by implication contention. *See* TEX. R. CIV. P. 166a(i); *see also Koonce*, 663 S.W.at 452. Accordingly, we overrule O'Leary's second issue.

### 3. Coleman's Deed to Lot 1

In his third issue, O'Leary notes that Lot 1 was conveyed to Coleman by a warranty deed stating that the conveyance was subject to all "[v]isible and apparent easements on or across the property herein described." O'Leary argues that this language, the fact that Coleman knew that the pier belonged to O'Leary, and the fact that the pier could only be reached by crossing Lot 1, supports a finding that O'Leary had an easement over Lot 1 as a matter of law. Coleman counters by arguing that O'Leary's third issue was not properly preserved and, alternatively, that O'Leary does not have standing to claim benefits under the deed to Lot 1 since O'Leary was not a party to the deed or its warranties.

#### A. Applicable Law

The primary duty of a court when construing a deed is to ascertain the intent of the parties from the four corners of the document. *Luckel*, 819 S.W.2d at 461-62. "The parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *Id.* at 462 (quoting *Altman*, 712 S.W.2d at 118). As a result, when seeking to ascertain the intent of the parties, a court attempts to harmonize all parts of the deed. *Id.* (citing *Altman*, 712 S.W.2d at 118). Even if different parts of the deed appear contradictory or inconsistent, a court must strive to harmonize all of its parts and

15

to construe the instrument so as to give effect to all of its provisions. *Id.* (citing *Benge v. Scharbauer*, 259 S.W.2d 166*,* 167 (Tex. 1953)).

An easement is considered an interest in land; therefore, the creation and transfer of such an interest is subject to the statute of frauds, unless the easement is imposed by operation of law, i.e. easements created by means other than a writing. *See Drye*, 364 S.W.2d at 203 & n.5 (noting that "a license, under some conditions, may rise to the dignity of an easement and must be in writing"); *see also Schilab v. Dierlam*, No. 13-03-00185-CV, 2004 Tex. App. LEXIS 7260, at *6 (Tex. App.–Corpus Christi Aug. 12, 2004, no pet.) (mem. op.). In other words, O'Leary must demonstrate that the alleged easement was expressly conveyed in compliance with the statute of frauds to establish an easement as a matter of law. *See Drye*, 364 S.W.2d at 203; *see also Ross*, 2006 Tex. App. LEXIS 10656, at **16-17; *Schilab*, 2004 Tex. App. LEXIS 7260, at *6.

**B. Discussion**

As a preliminary matter, we note that O'Leary did raise this issue with the trial court in his response to Coleman's motion for partial summary judgment; therefore, this issue has been preserved for appeal.[9] *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly

---

[9] In his response to Coleman's motion for partial summary judgment, O'Leary noted that:

When Coleman purchased his property, the very first item excepted from the deed was the following:

1. Visible and apparent easements on or across the property herein described;

. . . .

Since Mr. Coleman knew that the Deed that gave him his rights in Lot 1 was specifically made subject to visible and apparent easements on or across the property, Mr. Coleman always understood that the O'Leary's were entitled to cross the very southwestern-most corner of his property as necessary to access that dock. He never objected from 1992 through 2004.

presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). However, O'Leary does not have standing to claim a benefit derived from the warranty deed between the Walshes and Coleman. *See S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007); *see also Haug v. Carter*, No. 03-03-00476-CV, 2004 Tex. App. LEXIS 6817, at \*21 (Tex. App.–Austin July 29, 2004, pet. denied) (noting that "[a] person who is not a party to a contract will still have a cause of action to enforce the contract if it was made for his or her benefit," but "[t]he person claiming to be a third-party beneficiary must establish the existence of a contract and standing as a third-party beneficiary").

Standing is a component of subject-matter jurisdiction, and we thus consider the appellees' standing under the same standard by which we review subject-matter jurisdiction generally. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Subject-matter jurisdiction presents a question of law; we review the district court's decision de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). The general test for standing for individuals requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Bd. of Water Eng'rs v. City of San Antonio*, 155 Tex. 111, 283 S.W.2d 722, 724 (1955).

In the instant case, O'Leary would not be properly characterized as a third-party beneficiary because he was not a party to the deed conveying Lot 1 from the Walshes to Coleman even though he attempts to derive a benefit from the deed on appeal. *See Canfield v. Countrywide Home Loans, Inc.*, 187 S.W.3d 258, 263-64 (Tex. App.–Beaumont 2006, no pet.) (applying third party beneficiary analysis within the context of a deed of trust

17

and warranty deed conveying property); *Haug*, 2004 Tex. App. LEXIS, at **20-24 (applying third party beneficiary analysis to a conveyance of easements located on Lake Travis). The Texas Supreme Court has held that there is a presumption against conferring third-party beneficiary status on non-contracting parties. *See S. Tex. Water Auth.*, 223 S.W.3d at 306 (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)). In determining whether a third party may enforce or challenge a contract between others, it is the contracting parties' intent that controls. *See Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975).

The supreme court further noted that the intent to confer a direct benefit upon a third party "must be clearly and fully spelled out or enforcement by the third party must be denied." *MCI Telecomms. Corp.*, 995 S.W.2d at 651. Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract. *Id.* at 652. "A third party may only enforce a contract when the contracting parties themselves intended to secure some benefit for the third party and entered into the contract directly for the third party's benefit." *S. Tex. Water Auth.*, 223 S.W.3d at 306 (citing *MCI Telecomms. Corp.*, 995 S.W.2d at 651; *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002)). In establishing that the contracting parties intended to confer a benefit to the third party, the third party must benefit more than incidentally. *Id.* In other words, the third party must be either a donee or creditor beneficiary. *MCI Telecomms. Corp.*, 995 S.W.2d at 651. A person is a donee beneficiary if the performance promised will come to him as a pure donation. *Id.* If performance will come to satisfy a duty or legally enforceable commitment owed by the promisee, then the third party is considered a creditor beneficiary. *Id.*

The record reflects that a contract—the deed—existed, but O'Leary has not

18

presented any evidence indicating that the parties to the deed—the Walshes and Coleman—intended to confer a benefit to him. The record indicates that the Walshes and Coleman entered into the deed for the purpose of conveying Lot 1 to Coleman, not for the purpose of conveying an easement to O'Leary. The benefit O'Leary derives from the deed is incidental, at best. Moreover, it is noteworthy that the deed makes reference to an easement for public utilities, an easement "in favor of Cameron County Fresh Water Supply District Number One (1)," and an easement and right of way executed by L.C. Guentel to Central Power and Light Company. However, the deed does not explicitly reference O'Leary's alleged easement. Therefore, because O'Leary has not proven that the parties intended to confer more than an incidental benefit to him and because O'Leary would not be considered a third party beneficiary, we conclude that O'Leary does not have standing to claim benefits under Coleman's deed. Accordingly, we overrule O'Leary's third issue.

## IV. Conclusion

Because O'Leary has raised a material fact issue as to his first issue pertaining to an easement by estoppel, we reverse and remand for proceedings consistent with this opinion.

        _____
        DORI CONTRERAS GARZA,
        Justice

Memorandum Opinion delivered and
filed this the 8th day of May, 2008.

19